ILLINOIS CENTRAL GULF RAILROAD COMPANY, Plaintiff, v. THE DEPARTMENT OF LOCAL GOVERNMENT AFFAIRS *et al.*, Defendants-Appellees (Board of Trustees of Community College District No. 508 *et al.*, Petitioners-Appellants).—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ILLINOIS BELL TELEPHONE COMPANY, Defendant (Board of Trustees of Community College District No. 508 *et al.*, Petitioners-Appellants).

First District (4th Division)   Nos. 87—0625, 87—0632 cons.

Opinion filed April 28, 1988.

Arvey, Hodes, Costello & Burman, of Chicago, and Moss & Bloomberg, Ltd., of Bolingbrook (Roger G. Fein, Joel S. Siegel, Barry L. Moss, and George A. Marchetti, of counsel), for appellants.

Richard M. Daley, State's Attorney, and Johnson & Colmar, both of Chicago (Joan S. Cherry, and Susan Condon, Assistant State's Attorneys, and Mark V. Chester and Steven Lawson, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Petitioners are various taxing districts of Cook County. As plaintiffs in a consolidated class action entitled Board of Trustees of Community College District No. 508 v. Edward J. Rosewell, 82 CH 8607 (District 508), petitioners sought leave to intervene in two other actions, Illinois Central Gulf R.R. Co. v. Department of Local Govern-

mental Affairs, 79 L 7854 (Illinois Central Gulf) and People v. Illinois Bell Telephone Co., 80 L 60002 (Illinois Bell). Petitioners claim to be entitled to interest accrued on various county tax escrow accounts by virtue of a judgment entered in their favor in District 508. In that case, the court entered an injunction against Rosewell, enjoining him as county treasurer and collector from distributing the earnings he received on his investment of real estate and personal property tax collections and ordering him to create a segregated fund into which the earnings were to be deposited. Petitioners, as the county taxing districts which were entitled to the principal taxes collected, were to receive the interest on the accounts, *pro rata*, after a certain date.

In Illinois Central Gulf, the court ordered Rosewell to distribute the interest that had accrued on certain escrow accounts into the general corporate fund of Cook County. In the Illinois Bell case a large sum of money representing Illinois Bell's personal property tax liability and accrued interest and penalties was ordered to be distributed to the prevailing party upon final disposition of the case.

The District 508 plaintiffs, petitioners in the pending appeal, sought intervention in Illinois Central Gulf and Illinois Bell to protect their perceived claim to the interest earned on the escrow accounts in those cases.

Although the petitions for leave to intervene and seek post-judgment relief in Illinois Central Gulf and Illinois Bell were filed more than two years following the entry of final judgments in those cases, petitioners argue that the county fraudulently concealed the existence of the two cases and thereby prevented petitioners from protecting their interests in the funds in question.

The trial court denied the petitions for intervention and relief, finding no fraudulent concealment that would toll the two-year limitation period for seeking relief from judgments pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401). On appeal, petitioners contend that the court erred by failing to consider the import of the injunction entered against the county in the District 508 case. Petitioners also urge this court to decide who should be entitled to the interest earned on the tax escrows because the issue is one of public importance.

We affirm the trial court.

BACKGROUND

On October 20, 1982, the trial court in District 508 entered a preliminary injunction against Rosewell in his official capacity. Pursuant

to the terms of the injunction, Rosewell was enjoined from distributing the earnings (investment interest) that he had received upon taxes he had collected on behalf of the taxing districts. He was to segregate those funds. Petitioners had brought the suit to challenge the collector's practice of retaining the interest earned on the taxes and distributing it into the county treasury for general county purposes. On December 14, 1984, the court entered judgment in favor of the petitioner class, finding that the class members (taxing districts) were entitled to the interest that the county treasurer had received on the invested tax monies, effective on and after May 27, 1983.

On November 15, 1983, the trial court in Illinois Central Gulf entered a final judgment order directing the county treasurer to pay to the appropriate taxing districts certain sums representing the principal amount of contested real estate taxes that had been held in escrow pending the litigation. The court further directed that the interest that had accrued on those sums be paid to the general corporate fund of Cook County for general county purposes. The escrow was then dissolved.

On October 25, 1982, the trial court in Illinois Bell entered an interlocutory order directing Illinois Bell Telephone Company to pay to the Cook County treasurer $26,311,943.90. This sum represented Bell's total 1978 personal property taxes and accrued interest and penalties, all of which was disputed by Illinois Bell. Pending litigation of the tax dispute, the funds were to be segregated into one or more interest-bearing accounts that were not to be disbursed, commingled, or used for any purpose until final disposition of the matter. At that time, the entire amount, including accrued interest, was to be paid either to Illinois Bell, if it prevailed, or to the county treasurer in full satisfaction of the disputed taxes, interest and penalties if the county prevailed. On June 3, 1983, the court entered a final judgment order directing all monies to be paid to the county. The escrow was then dissolved.

Petitioners learned of the Illinois Central Gulf and Illinois Bell cases in early 1985, after the court-appointed auditor in District 508 discovered that the escrows in those cases had earned millions of dollars, at least some of which apparently had not been turned over to the District 508 trustee to be included in the escrow established therein. Accordingly, petitioners sought a turn-over order, requesting the District 508 court to award them the interest earnings from the Illinois Central Gulf and Illinois Bell escrows on the grounds that they came within the scope of judgment entered in District 508 on December 14, 1984.

The District 508 trial court denied the turnover petitions without prejudice. Petitioners then sought leave to intervene in the other two cases. Both petitions for leave to intervene were filed more than two years after final judgments were entered in the cases. Petitioners alleged, however, that the County failed to inform the courts in Illinois Bell and Illinois Central Gulf of the District 508 injunction. Accordingly, they relied on section 2—1401(c) of the Code of Civil Procedure, which tolls the two-year period for filing petitions for post-judgment relief if the ground for relief is fraudulently concealed by the party against whom relief is sought. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401(c).) Petitioners sought modification of the judgment orders, to provide that the interest earnings on the escrows be paid to the District 508 trustee so that he could distribute them in accordance with the final order entered in that case.

The trial court held that there was no fraudulent concealment and that the petitions for post-judgment relief were therefore untimely filed. The court also expressed doubts about the propriety of intervention. Because of its ruling on procedural grounds, the trial court did not reach the merits of the underlying controversy.

OPINION

I

Petitioners concede that their petitions for post-judgment relief were not filed within the statutory, two-year period, but urge us to hold that the county's failure to disclose to them the existence of the Illinois Bell and Illinois Central Gulf cases constitutes fraudulent concealment. Petitioners contend that the trial court placed an unreasonable burden on them to investigate pending court cases which might be included in the scope of the District 508 injunction.

Petitioners seem to suggest that the county knowingly violated the District 508 injunction when it disbursed interest funds pursuant to court order upon the final disposition of Illinois Central Gulf and Illinois Bell. Petitioners admit that they received some interest from the escrows, but argue that they were only paid interest earned after the final maturity of the investments in the escrows, as distinct from interest earned on the taxes while they were held in the escrows. However, because of the procedural posture of this matter, we cannot determine—if indeed we could from this record—whether and to what extent the interest from the Illinois Bell and Illinois Central Gulf escrows should have been paid into the District 508 fund for distribution

to petitioners.[1] It would, in fact, be improper for us to reach the merits of the underlying controversy since we find that the trial court's ruling on the section 2—1401 petitions is well within the acceptable range of its discretion. That noted, we are left with the limited issue of whether or not the county's failure to disclose the existence of the other two cases to petitioner or the failure to disclose the existence of the injunction to the courts in Illinois Bell and Illinois Central Gulf can be construed as fraudulent concealment.

Analytically, petitioners' argument suffers from an unstated assumption: the county committed wrongdoing by withholding information concerning the injunction and thereby thwarted petitioners' ability and right to protect their interests in the other cases. Since we do not address the issue of whether or not the injunction was violated (and we note that the trial court did not so find when presented with petitioners' turnover petitions), we must view petitioners' contention that they were owed a duty of disclosure in this light: As long as the county was aware that the Illinois Bell and Illinois Central Gulf litigation *potentially* fit within the reach of the District 508 injunction, the county was required to raise that possibility with petitioners and the various trial courts involved. Failing to do so, the county committed fraudulent concealment sufficient to toll the two-year limitation period.

---

[1]Such a determination appears to hinge on the interpretation of two cases, *Board of Commissioners of Wood Dale Library District v. County of Du Page* (1983), 96 Ill. 2d 378, 450 N.E.2d 332, *clarified on appeal after remand* (1984), 103 Ill. 2d 422, 469 N.E.2d 1370 and *Village of Oak Lawn v. Rosewell* (1986), 113 Ill. 2d 104, 497 N.E.2d 734. While extensive examination of these cases is neither necessary nor desirable, since we do not reach the merits of the underlying controversy, we note that the parties' classification of the interest escrows as *"Wood Dale"* interest or *"Oak Lawn"* interest is significant. The former is "interest earned on investments of monies *collected* for other taxing districts" by the county collector and undistributed, which the supreme court has ruled must be distributed to the taxing districts to which the principal tax liability is owed. (*Wood Dale,* 96 Ill. 2d at 381, 450 N.E.2d at 333.) *Oak Lawn* interest, on the other hand, is interest earned on delinquent, uncollected taxes, and is essentially penalty interest. Pursuant to section 224 of the Revenue Act of 1939 (Ill. Rev. Stat. 1985, ch. 120, par. 705), such penalty interest is to be paid into the county treasury to be used for county purposes. Since the key distinction is "collected" or "paid" taxes (monies held temporarily in interest-bearing accounts for distribution to the various taxing bodies) as opposed to "uncollected" or "delinquent" taxes, the county argues that the escrows in Illinois Bell and Illinois Central Gulf were uncollected, in the sense that they were disputed, even though they were deposited into the escrows. By classifying the interest as penalty interest pursuant to *Oak Lawn,* respondents contend that petitioners would not be entitled to any of the monies. Petitioners, of course, argue to the contrary, claiming that the interest falls under the *Wood Dale* classification of taxes collected and therefore invested on behalf of the taxing districts.

We do not agree.

The trial court relied on *County Board of School Trustees ex rel. Hinsdale Township High School District No. 86 v. Association of Franciscan Fathers* (1977), 49 Ill. App. 3d 686, 696, 364 N.E.2d 691, 699, in which the court stated that the concealment of a cause of action " 'must be something of an affirmative character, designed to prevent, and which does prevent, the discovery of the cause of action. Mere silence \*\*\* does not amount to fraudulent concealment \*\*\*.' " 49 Ill. App. 3d at 696, 364 N.E.2d at 699, quoting *Nogle v. Nogle* (1964), 53 Ill. App. 2d 457, 202 N.E.2d 683, 687. See also *Crowell v. Bilandic* (1980), 81 Ill. 2d 422, 427-28, 411 N.E.2d 16, 18 ("It is well established that fraudulent concealment sufficient to toll a statute of limitations requires affirmative acts or representations designed to prevent discovery of the cause of action or ground for relief"). Accord *Dils v. City of Chicago* (1978), 62 Ill. App. 3d 474, 378 N.E.2d 1130.

In the pending case, the trial court ruled that without affirmative concealment there was no fraudulent concealment and that "[r]espondents in this litigation did not engage in fraudulent concealment." Indeed, petitioners do not claim that there was any active or affirmative fraud in this case.

Petitioners assert, however, that affirmative acts or misrepresentations are not the only types of conduct that will amount to fraudulent concealment, citing *Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 282, 433 N.E.2d 253. *Ostendorf* involved the defendant's failure to comply with a duty of full and truthful disclosure imposed by the discovery rules. The court held that violation of this duty constituted fraudulent concealment for purposes of tolling a statute of limitations. The defendant, Harvester, had responded to specific interrogatories by claiming that, to its knowledge, it did not possess reports or information on a claimed product defect when in fact it did. The Illinois Supreme Court concluded that Harvester's responses were, "if not outright falsehoods, half-truths." (89 Ill. 2d at 282, 433 N.E.2d at 287.) Hence, the court's ruling was premised on the misleading nature of actual responses rather than mere silence.

Failure to disclose material information under certain circumstance in which a duty to speak exists may indeed amount to fraud. Thus, the courts have found that a fiduciary's silence may be actionable because of the special nature of a fiduciary relationship. (*Chicago Park District v. Kenroy, Inc.* (1980), 78 Ill. 2d 555, 402 N.E.2d 181.) Passive concealment of pertinent facts during a business transaction does not constitute actionable fraud, however. (*Skidmore v. Johnson* (1948), 334 Ill. App. 347, 79 N.E.2d 762.) In another context, fraud

may be found if one party with superior knowledge and access to material facts fails to disclose them. For example, if the seller of a used house knows of and conceals facts materially affecting the value or desirability of the home and the buyer has no access to that information, the seller has a duty to disclose those facts. *Posner v. Davis* (1979), 76 Ill. App. 3d 638, 395 N.E.2d 133.

■■ We find no fiduciary relationship between the parties in this case, no overreaching, and nothing similar to the cases in which failure to disclose a known dangerous or defective condition may be tantamount to fraud. In other words, the county was not under a duty to disclose the existence of the Illinois Bell and Illinois Central Gulf cases, which were of public record, and certainly did nothing to actively conceal them.

Petitioners nevertheless maintain that the court placed an undue burden on them to search public records. We cannot agree. It is undisputed that the existence of the two cases could have been determined by simply checking the pertinent records of the clerk of the circuit court of Cook County. Reliance on another's representations (or, in this case, omissions) must be reasonable. See *Schmidt v. Landfield* (1960), 20 Ill. 2d 89, 169 N.E.2d 229.

Furthermore, petitioners had actual notice of the Illinois Bell and Illinois Central Gulf cases before the expiration of the two-year period prescribed in section 2—1401. The District 508 auditor reported them to the court in February and May 1985.[2] Under these circumstances petitioners' argument, which was steadily losing momentum, comes to a complete stop.

■■ Since petitioners failed to establish that the county fraudulently concealed the existence of the other two cases, we affirm the trial court's denial of the petition to intervene and modify the judgments.

## II

Although the trial court ruled that the petitions for post-judgment relief were time barred under section 2—1401, the court also expressed doubts as to the propriety of allowing intervention at all. Petitioners were assumed to be proper intervenors for the purpose of presenting their section 2—1401 petitions to open up or modify the

---

[2]In fact, one of the taxing districts that is a member of petitioners' class filed suit against Rosewell a few months after the Illinois Bell judgment, claiming that the interest on the escrow in that case had been misdirected. People ex rel. Board of Education v. Rosewell, 83—CH 9757, *appeal pending after dismissal*, No. 85—2066.

judgments entered more than two years after their entry; the only issue ruled upon was whether the two-year limitation period was tolled by the alleged fraudulent concealment. We find, however, that there is a second and distinct timeliness requirement: section 2—408 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—408). Under this provision there must be a *timely* application. Then, a party who fulfills certain requirements will be permitted to intervene as of right or as a matter of the court's discretion, depending on the circumstances. (Ill. Rev. Stat. 1985, ch. 110, pars. 2—408(a) through (d).) Subsection (e) directs the court to consider, in cases in which the intervention is discretionary, "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." (Ill. Rev. Stat. 1985, ch. 110, par. 2—408(e).) Subsection (f) provides further discretion to the trial court regardless of whether the intervention is of right or discretionary, providing, among other things, "that the applicant shall not raise issues which might more properly have been raised at an earlier stage of the proceeding, that the applicant shall not raise new issues or add new parties, or that in other respects the applicant shall not interfere with the control of the litigation, as justice and the avoidance of undue delay may require." Ill. Rev. Stat. 1985, ch. 110, par. 2—408(f).

■ In the pending case, the intervention and relief requested by petitioners would undoubtedly raise new issues (such as the characterization of the interest as *"Wood Dale"* or *"Oak Lawn"*), add new parties (the class of plaintiffs from District 508), and otherwise create major "interference" with the litigation, since the escrows in question had been dissolved long since, following the disbursal of the funds. Hence, to "modify" the judgments would be to vacate them, in order to consider the new issues and claims to monies no longer available for distribution. This would violate the preference for finality of judgments. See, *e.g., Crowell v. Bilandic* (1980), 81 Ill. 2d 422, 411 N.E.2d 16 (purpose of two-year limit in section 2—1401 is to establish stability and finality of judicial proceeding).

We conclude that the petitions for relief from the final judgments entered in Illinois Bell and Illinois Central Gulf were not timely, either under section 2—1401 or section 2—408.

For the foregoing reasons, we affirm the orders of the trial court.

Affirmed.

McMORROW and JOHNSON, JJ., concur.