RONALD HEIDER, Plaintiff-Appellant and Cross-Appellee, v. LEEWARDS CREATIVE CRAFTS, INC., Defendant-Appellee and Cross-Appellant.

Second District   Nos. 2—92—0812, 2—92—1002 cons.

Opinion filed May 14, 1993.

William R. Fahey, of Cooney & Conway, of Chicago, and J. Anderson Berly and Edward J. Westbrook, both of Ness, Motley, Loadhold, Richardson & Poole, of Charleston, South Carolina (Robert M. Turkewitz, of counsel), for appellant.

Deborah G. Lava and Lawrence Oliver, both of Skadden, Arps, Slate, Meagher & Flom, of Chicago (John P. Buckley, of counsel), for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Both parties appeal from the trial court's rulings on the sufficiency of the third amended complaint of plaintiff, Ronald Heider (Heider). Counts I, II, and III purport to allege common-law fraud, a Restatement (Second) of Torts §353 (1965) violation, and tortious interference, respectively, arising from plaintiff's purchase of a warehouse that contains asbestos insulation from defendant, Leewards Creative Crafts, Inc. (Leewards). On June 16, 1992, the trial court dismissed counts I and III with prejudice and denied defendant's motion to dismiss count II. This court consolidated defendant's cross-appeal with respect to count II with plaintiff's appeal of the dismissal of counts I and III. At issue is the sufficiency of all three counts of plaintiff's third amended complaint. We affirm in part and reverse in part.

### FACTS ALLEGING FRAUDULENT MISREPRESENTATION AND CONCEALMENT

We will first address the issues raised in this appeal. According to the record, defendant offered the warehouse at 840 North State Street, Elgin, for sale in 1984. Defendant maintained a store with parking near the warehouse on the same property. In December 1984, plaintiff and his real estate agent, Romeo E. Mura, toured the warehouse with Leewards' real estate agents. Mura inquired about the condition of the building, including the overall condition of the roof, the age and condition of the boiler, and the amount of electrical power. Mura also inquired about the nature of the material on the columns and beams in the warehouse, because the material was somewhat unusual in appearance and appeared to be in a deteriorated condition. Defendant's real estate agent told Mura that they would have to ask defendant for some of the information, including the nature of the material on the columns. During his inspection, plaintiff also asked defendant's agents whether there was anything else about the condition of the building that he should know before deciding whether

to make an offer. The real estate agents told him that they were not aware of anything. On March 6, 1985, plaintiff sent a letter of intent to purchase the warehouse to Mura.

In July 1985, a second meeting was held between plaintiff, Mura, and the defendant's agents. At this meeting, one of defendant's agents informed plaintiff and Mura that they had checked with defendant and that the material on the columns and beams was "not a problem."

In August 1985, defendant was sold by General Mills, Inc., to Munford, Inc. (Munford). Munford's administrative vice-president, Mr. Jay Rubel, took over the negotiations on behalf of defendant for the sale of the building. Rubel toured the warehouse. He asked if the material on the columns contained asbestos and was informed that it did. Rubel was then informed by defendant about an October 6, 1980, asbestos report, and shown a copy of the report. The report was an intracompany memo from General Mills to defendant which was based on an analysis by General Mills of the material on the columns and beams. The analysis of the material showed a content of 8% to 10% chrysotile asbestos. Additionally, air-monitoring analyses had been done inside the warehouse and the report revealed that the levels of airborne asbestos were very low compared to the Occupational Health and Safety Administration (OSHA) standard. According to the report, no significant adverse health effects would be expected among employees working in the warehouse. In that correspondence General Mills specifically recommended, in order to ensure that the airborne asbestos concentrations remained low, that all columns covered with asbestos-containing material be enclosed. In addition, General Mills recommended that employees working in the warehouse should be trained to prevent accidental dislodging of the insulation.

Upon learning of the existence of the asbestos report, Rubel inquired of an in-house lawyer whether defendant had a legal obligation to disclose the fact that asbestos was on the columns. He was told it had no such legal obligation. In addition, in his third amended complaint, plaintiff alleged that Rubel inquired of senior corporate officials whether the existence of the report should be revealed to plaintiff. Plaintiff alleged that Rubel was advised that neither the report nor the presence of asbestos should be made known to plaintiff.

The contract of sale was signed December 11, 1985. Before closing, plaintiff met with Rubel and asked if there was anything about the condition of the building that he should know before continuing with the process of the purchase of the building. Rubel did not inform plaintiff about the presence of asbestos on the columns and beams or

about the existence of the General Mills report. He failed also to mention the recommendation of remedial measures and education of employees as to the treatment of the asbestos insulation. The closing was conducted on June 16, 1986.

Plaintiff first learned of the presence of asbestos in April 1988, after scientific analysis was performed on the material. Shortly thereafter, plaintiff contacted Rubel and inquired about the problem. Rubel acknowledged the existence of the asbestos, informed plaintiff of the report, and indicated his impression that the asbestos, if left undisturbed, would cause no problem.

### FACTS ALLEGING TORTIOUS INTERFERENCE

On September 11, 1985, in conjunction with plaintiff's negotiations to buy the warehouse, Rubel wrote plaintiff affirming that defendant would "have no objection to additional retail space being developed within the property as long as it [was] non-competitive."

In May 1990, plaintiff entered into a contract with Thornton Oil Corporation (Thornton) to sell it a parcel of the property on which plaintiff's warehouse and the defendant's store are located. After defendant sold the property to plaintiff, defendant continued to maintain its store by leasing the space back from plaintiff. The contract plaintiff and Thornton entered into was contingent on several conditions, one of which was that the buyer had to receive governmental authorization, permits, and/or approvals required for the buyer's intended uses.

On November 5, 1990, the land use committee of the Planning and Land Use Commission of the City of Elgin unanimously approved a proposal presented by plaintiff and Thornton for plaintiff to sell the southern part of plaintiff's property to Thornton for use as a gas station/convenience store. A zoning variance was necessary to permit the use of the land for this purpose. The matter then proceeded to the Elgin city council.

Defendant was not notified or consulted by plaintiff regarding the planned development. Defendant became aware of the petition for a zoning variance only after the land use committee had met. Defendant voiced its opposition to the variance in a letter from its president and chief executive officer, John Popple, to the City of Elgin. Defendant opposed the variance because the proposed use would (1) interfere with defendant's store's parking which was located on the property; (2) restrict visibility of defendant's store; and (3) aggravate traffic patterns and make the entrance and exit to the parking lot more hazardous. Plaintiff alleges that defendant, through Popple, "wilfully and

maliciously interfered with plaintiff's contemplated transaction with Thornton Oil Company by utilizing the input and influence of Mr. Popple's wife, Mrs. Cheryl Popple, an Elgin city council member, to generate opposition to plaintiff's zoning request."

After listening to argument in opposition, the Elgin city council denied the proposed variance. By the terms of plaintiff's contract, the deal with Thornton fell through.

Plaintiff filed his third amended complaint. Defendant filed motions to dismiss counts I, II, and III of the plaintiff's third amended complaint, pursuant to section 2—615 of the Code of Civil Procedure. (Ill. Rev. Stat. 1983, ch. 110, par. 2—615.) On June 16, 1992, the trial court granted defendant's motions to dismiss counts I and III with prejudice and denied defendant's motion to dismiss count II but certified the question under Illinois Supreme Court Rule 308 (134 Ill. 2d R. 308). Plaintiff timely filed a notice of appeal regarding the trial court's dismissal of counts I and III. This court granted defendant's application for leave to appeal the ruling on count II and consolidated the appeal and the cross-appeal.

A complaint must be sufficient legally in order to state a cause of action. (*Zimmerman v. Northfield Real Estate, Inc.* (1986), 156 Ill. App. 3d 154, 160.) Upon a motion to dismiss, all facts properly pleaded in the complaint are taken as true and all reasonable inferences are drawn in favor of the nonmovant. (*Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 438.) A pleading need not show a certainty of recovery, only a possibility of recovery, and it should not be dismissed unless it appears that the pleader in no event would be permitted to recover. *Zimmerman*, 156 Ill. App. 3d at 160-61.

COMMON-LAW FRAUD

Plaintiff's first contention is that the trial court erred in dismissing count I, which purported to allege common-law fraud. In his third amended complaint, plaintiff asserted common-law fraud under two theories: fraudulent misrepresentation and fraudulent concealment. The rationale of the trial court was that the representations alleged were not "actionable." We disagree. We determine that the complaint adequately alleges common-law fraud under both theories.

The facts which comprise an alleged fraud must be pleaded with sufficient specificity, particularity, and certainty to apprise the other party of how he is to defend himself. (*Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 457.) The pleadings must contain specific allegations of facts from which fraud is the necessary or probable inference. (*A, C & S, Inc.*, 131 Ill. 2d at 457.) The elements of a cause

of action for fraudulent misrepresentation are: (1) false statement of material fact; (2) known or believed to be false by the party stating it; (3) intent to induce the other party to act; (4) action in reliance by the other party; and (5) damage to the other party resulting from such reliance. (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286.) In his third amended complaint, plaintiff alleged the following facts: his agent, Mura, inquired as to the nature of the material on the columns; the answer which was given by defendant's real estate agents after checking with defendant was that the material was "not a problem"; defendant knew of the existence of the asbestos in the column material and also of the existence of the report recommending remedial actions; the intent of the false statement was to induce the plaintiff to enter into a contract to purchase the warehouse; plaintiff relied on the statement and purchased the property to his detriment; there are significant costs of remediation of asbestos-containing insulation and, thus, the value of the property is diminished.

■■ Defendant contends that the statement that the material was "not a problem" was true and that this is supported by the asbestos report which revealed that the airborne asbestos levels were well below the allowable OSHA standard. Defendant further contends that the report concluded that no significant adverse health effects would be expected among people working in the warehouse. A statement which is technically true as far as it goes may nonetheless be fraudulent if it is misleading because it does not state matters which materially qualify that statement. (*St. Joseph Hospital v. Corbetta Construction Co.* (1974) 21 Ill. App. 3d 925, 952-53.) Moreover, "half the truth may obviously amount to a lie, if it is understood to be the whole." (W. Prosser, Law of Torts §106, at 696 (4th ed. 1971).) Here, although it is true that there was no immediate "problem" with respect to airborne asbestos contamination, there was the problem of potential release of asbestos into the warehouse environment. This issue was one of which defendant was well aware, since there were recommendations included in the report to enclose the material on the columns and educate employees about working in the vicinity of the material. We determine that plaintiff sufficiently alleged that defendant made a false statement.

Defendant posits that the statement was opinion, not fact, and thus is not actionable. It is the rule in Illinois that statements of opinion, as opposed to fact, do not give rise to an action for fraud. (*Marino v. United Bank of Illinois, N.A.* (1985), 137 Ill. App. 3d 523, 527.) However, whether a statement is one of fact or opinion depends upon the circumstances of each case.

" 'Wherever a party states a matter which might otherwise be only an opinion but does not state it as the expression of the opinion of his own but as an affirmative fact material to the transaction, *** the statement clearly becomes an affirmation of the fact within the meaning of the rule against fraudulent misrepresentation.' " (*Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 197, quoting *Buttitta v. Lawrence* (1931), 346 Ill. 164, 173.)

Furthermore, Professors Prosser and Keeton point out that it has been recognized that the expression of an opinion may carry with it an implied assertion that the speaker knows facts which would justify the opinion. He states:

"[T]he ordinary man is free to deal in reliance upon the opinion of an expert jeweler as to the value of a diamond, of an attorney upon a point of law, of a physician upon a matter of health, of a banker upon the validity of a signature, or the owner of land at a distance as to its worth, even though the opinion is that of his antagonist in a bargaining transaction. On the same basis it has been held that statements by a seller as to the capacity of the thing sold, or the condition of land, or other matters, which on the part of one without special knowledge would be regarded as mere opinion, may be relied on as statements of fact." (W. Keeton, Prosser & Keeton Torts §109, at 761 (5th ed. 1984).)

Here, defendant's realtor sought out information from defendant and communicated that information to plaintiff on a matter concerning the condition of defendant's property. It was on a matter peculiarly within the realm of knowledge of defendant, as owner of the property. We determine that, in the instant case, sufficient facts are alleged to support the notion that even if the statement was an opinion, it carried with it an implied assertion that the speaker knew facts which would justify the opinion, and thus could be taken as a statement of fact.

■■ Defendant asserts that the statements were not material and thus no fraudulent misrepresentation occurred. A misrepresentation is "material" if it is such that, had the other party been aware of the statement, he would have conducted himself differently. (*Brown v. Broadway Perryville Lumber Co.* (1987), 156 Ill. App. 3d 16, 24.) Plaintiff alleges in his third amended complaint that he would not have closed or completed the purchase of the warehouse had he known of the existence of asbestos in that building. It is noted that the response to plaintiff's agent's inquiry came before the contract of sale was signed. Thus, taken in the light most favorable to plaintiff,

the evidence supports the fact that plaintiff relied on the statement. Thus, materiality is sufficiently alleged.

■ Next, defendant argues that plaintiff did not allege facts to establish a knowledge of the falsity of the statement. First, plaintiff alleged that defendant knew of the contents of the report and the existence of the asbestos in the warehouse insulation. Defendant's knowledge of the contents of the report means that defendant had knowledge of the health hazard that asbestos can pose, since the report referred to "significant adverse health effects" and remedial measures to avoid them. It is also alleged that the purpose of concealing the existence of the report and the existence of the asbestos on the columns was to deceive plaintiff and to encourage plaintiff to purchase the building.

Furthermore, it is clear that plaintiff's allegations are sufficient to support the requirement of knowledge of falsity by defendant, whether defendant's agents knew of the asbestos or not. We acknowledge the purported false statements were made by defendant's agent(s), not by defendant itself. If the defendant's agents knew of the existence of the report and the asbestos, then their principal, defendant, would be liable for the representations and concealment by the agents. A principal may be liable to third parties for wrongful or tortious acts committed by his agent at his direction or while acting within the scope of his authority. (*City of Chicago v. Roppolo* (1983), 113 Ill. App. 3d 602, 614.) Nevertheless, if the defendant's agents did not know of the existence of the report and the asbestos, then their principal, defendant, is still liable for the misrepresentation. Where a principal is selling property with a hidden defect, or where an agent is employed to conduct a single transaction and the matter is not readily discoverable, the principal has the duty to inform a selling agent of the defect. In such cases, the failure to inform the agent may be the basis of liability. (Restatement (Second) of Agency §256, Comment *d*, at 557 (1958).) Thus, it is sufficiently alleged that defendant knew of the falsity of the statement.

In addition, plaintiff also adequately adduced an intent to induce the plaintiff to act. Plaintiff alleged that defendant was at all times prior to the closing aware that plaintiff and his agent had inquired about the nature of the material on the columns and, with full knowledge and intent to deceive, concealed and fraudulently misrepresented the condition of the building, and failed to deliver the asbestos report to the plaintiff. Furthermore, plaintiff alleged that the purpose of concealing the existence of asbestos on the columns was to deceive plain-

tiff and to encourage plaintiff to consummate the transaction to purchase the building.

■■ Next, defendant disputes plaintiff's reliance. Defendant argues that plaintiff did not rely on the statement "it's not a problem" because he had previously made an offer to buy the building. We do not agree. Plaintiff has sufficiently alleged that he relied on the misrepresentation by alleging that he would not have completed the purchase of the warehouse had he known of the existence of asbestos in the building.

Next, defendant contends that plaintiff's reliance on defendant's agent's statement was not justified as a matter of law. Defendant relies on *Smith v. Ethell* (1986), 144 Ill. App. 3d 171, to stand for the proposition that reliance on another's statements is not justified where the plaintiff-purchaser noticed a possible defect, had an opportunity to inspect before signing the contract, and planned a substantial investment. (*Ethell*, 144 Ill. App. 3d at 175.) However, that case is distinguishable. In *Ethell*, the plaintiff-purchasers of a tavern noticed that the ceiling was sagging and had water stains. Upon inquiry, plaintiffs were informed by defendants-vendors that the roof was in good condition, that it did not leak, and that the water stains were caused by an air conditioner located above the ceiling. Further, the defendant repeatedly discouraged the plaintiffs from going into the attic to inspect. After purchasing the building, plaintiffs discovered holes in the roof and sought to rescind the contract. The court held that the plaintiffs were on notice of a potential defect and were not justified in their reliance on defendants' statements. *Ethell*, 144 Ill. App. 3d at 175.

That case is distinguishable on the basis that in *Ethell* at issue was a *patent* defect, whereas in the instant case at issue is a *latent* defect, that is, one which is hidden or concealed. (*Munjal v. Baird & Warner, Inc.* (1985), 138 Ill. App. 3d 172, 179.) In the instant case, although plaintiff noticed the deteriorated nature of the material on the columns, the presence of asbestos fibers is not detectable by the naked eye. The material must be subjected to microscopic analysis to detect the presence of asbestos, and thus is a latent defect.

We considered a case in which a latent defect existed in *Munjal v. Baird & Warner, Inc.* (1988), 138 Ill. App. 3d 172. In that case, the foundation of the home for sale was improperly built below the level of groundwater. Defendant-seller had been notified by the village that a significant portion of his property was on a floodplain. When plaintiff-purchaser asked about water seepage on one of the basement walls, defendant-seller said he had noticed leaking there one other

time, two years before, but that it had dried up. Plaintiff purchased the house. Within the first six months that plaintiff lived in the house, the basement flooded five to six times. Plaintiff brought suit, charging common-law fraud, alleging that defendant misrepresented that the water in the basement was a temporary situation. Expert testimony established that the house with the defect was worth significantly less than plaintiff paid for it. Other expert testimony established that there was a *hidden* defect: the foundation was built lower than the level of groundwater. The court ruled that the seller's failure to disclose the full extent of the problem was an attempt to induce purchaser to buy the house for a value that did not reflect the existence of the defect. (*Munjal*, 138 Ill. App. 3d at 180-81.) We affirmed the jury's verdict of fraud. *Munjal*, 138 Ill. App. 3d at 181.

Like the latent defect in *Munjal*, the defect in the instant case was not detectable without expert analysis. As in *Munjal*, the seller in the instant case was aware of the defect. In both cases, the purchaser inquired about the nature of the symptoms of the defect, *i.e.*, in *Munjal*, inquiry was made as to the water on the walls and floor, and in the instant case inquiry was made as to the nature of the fluffy material on the columns. Because a latent defect is at issue, we determine that plaintiff's reliance on defendant's agent's representations was justified in the instant case. We conclude that plaintiff has adequately alleged the elements of fraudulent misrepresentation.

▮ In addition, we determine that the plaintiff adequately alleged common-law fraud on the basis of fraudulent concealment. Mere silence in a business transaction does not amount to fraud. (*Russow v. Bobola* (1972), 2 Ill. App. 3d 837, 841.) Yet, silence accompanied by deceptive conduct or suppression of material facts gives rise to active concealment; it is then the duty of the party which has concealed information to speak. *Russow*, 2 Ill. App. 3d at 841.

In the instant case, plaintiff alleged the following facts: the presence of asbestos fibers in the insulating material on the columns was a latent defect not discoverable without the use of sophisticated scientific testing; the defendant knew of the defect by way of the asbestos report in its possession; the defendant had a duty to reveal the existence of the report and the asbestos in the building upon inquiry from plaintiff; Rubel was advised by senior corporate officials not to reveal the existence of the report; plaintiff's agent inquired of defendant about the nature of the material on the columns; despite the knowledge of the existence of the report and the presence of asbestos, defendant and its agents did not reveal to plaintiff the material facts regarding this issue; and plaintiff would not have bought the ware-

house if he had known of the latent defect. Thus, in the instant case, defendant had knowledge of a material fact: the existence of asbestos in the warehouse insulation. Plaintiff alleges defendant suppressed that material fact, which gave rise to active concealment. (*Russow*, 2 Ill. App. 3d at 841.) On this basis, we find that sufficient facts asserting fraudulent concealment were alleged.

Defendant argues that the theory of fraudulent concealment fails, as there can be no duty to disclose absent a fraudulent misrepresentation and defendant contends no fraudulent misrepresentation occurred. We determine that defendant is mistaken in this belief. As we have already discussed, Illinois law supports the notion that fraudulent concealment may be found in the absence of an affirmative misrepresentation. That is, silence accompanied by deceptive conduct results in an act of concealment, and at that point a duty to disclose arises. (*Russow*, 2 Ill. App. 3d at 841; see also *Posner v. Davis* (1979), 76 Ill. App. 3d 638, 643.) The cases cited by defendant, *Zanbetiz v. Trans World Airlines, Inc.* (1966), 72 Ill. App. 2d 192, and *Naiditch v. Shaf Home Builders, Inc.* (1987), 160 Ill. App. 3d 245, can be distinguished. In *Zanbetiz*, the plaintiff was injured at Chicago O'Hare International Airport, after arriving there upon one of defendant's flights. She notified defendant of her injury, but did not know that the airport was owned by the City of Chicago, so did not notify it of her injury. Plaintiff was visited by an insurance adjuster or investigator on behalf of the City of Chicago, but was not informed by such agent of the identity of his principal, nor the fact that defendant was not the owner of the airport. At issue was the expiration of a statutory six-month notice period in which plaintiff was required to make her claim known to the City of Chicago. Plaintiff alleged fraud on the basis that the insurance investigator should have made known to her who owned the airport so that she could notify the appropriate party within the statutory period. The court held that the mere silence by the investigator as to this information was not a fraudulent misrepresentation. (*Zanbetiz*, 72 Ill. App. 2d at 201.) The court reasoned that plaintiff had access to public records to ascertain the ownership of the airport. (*Zanbetiz*, 72 Ill. App. 2d at 202.) Thus, *Zanbetiz* may be distinguished from the instant case because it involved facts accessible via public record and the instant case involves a latent defect which is not discoverable absent scientific analysis.

In *Naiditch v. Shaf Home Builders, Inc.* (1987), 160 Ill. App. 3d 245, plaintiff-purchaser alleged fraud in defendant's construction and sale of a new home which had defects. The court determined that no fraud by concealment or misrepresentation occurred. (*Naiditch*, 160

Ill. App. 3d at 261.) What was lacking in *Naiditch* were allegations by plaintiff that defendant made misrepresentations to induce plaintiff to buy the house. Thus, there was no allegation by plaintiff of defendant's deceit. Indeed, the evidence merely established that the house was not built in accordance with the plans and thereby was defective. (*Naiditch*, 160 Ill. App. 3d at 261.) *Naiditch* can be distinguished from the instant case on the basis that such allegations were clearly made by plaintiff in the instant case. Plaintiff adduced that defendant had in its possession the written report which revealed the existence of asbestos in the material covering the columns in the warehouse and did not reveal its existence to plaintiff. Plaintiff further alleged that the purpose of concealing the existence of the asbestos report and the existence of asbestos on the columns was to deceive plaintiff and to encourage plaintiff to consummate the transaction to purchase the building. Thus, allegations of defendant's deceit were made in the third amended complaint. In conclusion, we determine that plaintiff has adequately pleaded fraudulent concealment in his third amended complaint.

▇ Defendant argues that the trial court's dismissal of count I is supported further on the ground that plaintiff is bound by the judicial admissions contained in his original, verified complaint. Defendant asserts that the original, verified complaint did not allege any statements made by defendant about asbestos or the material on the columns; therefore, plaintiff's failure to allege a discussion regarding those issues is binding upon him.

In general, the trial judge should concern himself only with the contents of the amended complaint when determining its sufficiency. This is because an amendment which is complete in itself and does not refer to a prior, unverified pleading will ordinarily supersede the prior pleading. It is thus that a prior, unverified pleading ceases to be part of the record since it is, in effect, abandoned or withdrawn. (*Yarc v. American Hospital Supply Corp.* (1974), 17 Ill. App. 3d 667, 670.) However, where the original pleading is verified, it remains as part of the record upon the filing of the amended pleading. (*Yarc*, 17 Ill. App. 3d at 670.) Furthermore, the admissions of a party contained in an original, verified pleading are judicial admissions. Such judicial admissions bind the pleader despite the filing of an amended pleading which supersedes the original. (*Yarc*, 17 Ill. App. 3d at 670.) Admissions are not binding if the amended pleading asserts that the allegations in the original pleading were the product of mistake or inadvertence. *Rynn v. Owens* (1989), 181 Ill. App. 3d 232, 235-36.

In the instant case, at issue are the allegations only of the original, verified complaint and the third amended complaint, as the first amended and second amended complaints were not verified and therefore were not at issue. In the original, verified complaint, plaintiff alleged that he or his agent asked and received responses from defendant's real estate agents about the condition of the building, including the condition of the roof, the boiler, and the sprinkler system. In the third amended complaint, plaintiff alleged that he or his agent asked and received responses about the condition of the building, including the condition of the roof, the boiler, and the amount of electrical power, as well as the nature of the material on the columns and beams in the warehouse. Defendant asserts that these omissions from the original, verified complaint constitute judicial admissions that the plaintiff's inquiry and defendant's response as to the nature of the material on the columns never occurred. We do not agree.

The Code of Civil Procedure permits an amendment to pleadings "in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought." (Ill. Rev. Stat. 1991, ch. 110, par. 2—616(a).) To further the process in which litigants fully present their causes of action and settle their controversies on the merits, the greatest liberality should be provided in allowing amendments to the pleadings. *Calumet Construction Corp. v. Metropolitan Sanitary District* (1991), 222 Ill. App. 3d 374, 381.

The cases cited by defendant may be distinguished from the instant case. (See *Yarc*, 17 Ill. App. 3d 667 (where the incorporation by reference of evidence of lease negotiation such as unexecuted leases into a prior, verified complaint precluded plaintiff from later alleging that a hold-over tenancy was created between himself and defendants); *Schmahl v. A.V.C. Enterprises, Inc.* (1986), 148 Ill. App. 3d 324 (where defendant was not permitted to assert in a later-submitted affidavit that he had the ability to satisfy the debt owed plaintiff after testifying in a prior deposition that he did not have the ability to pay the debt at the time in question); *Hansen v. Ruby Construction Co.* (1987), 155 Ill. App. 3d 475 (where plaintiff's deposition testimony that he tripped over rubber bumpers just prior to a loading dock accident was held to be a judicial admission when other evidence demonstrated that no rubber bumpers were present on that loading dock at the time of the accident).) In those cases, a judicial admission was determined to have occurred as there were conflicts between a prior admission and a later pleading, and thus the prior admission precluded the later allegation. In the present case, plaintiff argues that he has

merely made the allegations more specific in order to conform with investigations and discovery he has performed. We determine that the fact that facts were omitted from the original, verified complaint does not constitute an admission arising from a conflict between the facts pleaded in the original, verified complaint and the facts pleaded in the third amended complaint. Therefore, the omission of allegations from the original, verified complaint does not constitute a judicial admission. In conclusion, the allegations of count I of the third amended complaint are sufficient to warrant a reversal of dismissal of that count.

### TORTIOUS INTERFERENCE

Plaintiff argues that the trial court erred in dismissing count III of the third amended complaint which alleged tortious interference with plaintiff's prospective economic advantage. The trial court's rationale in dismissing count III relied on *Arlington Heights National Bank v. Arlington Heights Federal Savings & Loan Association* (1967), 37 Ill. 2d 546, to support the proposition that there is a constitutional right for a citizen to appear in front of a legislative body to try to induce them to perform a specified act or redress a grievance.

■ To prevail on a claim for tortious interference with plaintiff's prospective economic advantage, plaintiff must prove: (1) his reasonable expectation of entering into a cogent business relationship; (2) the defendant's knowledge of the plaintiff's expectancy to enter into a business relationship; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from developing into a valid business relationship; and (4) damages to the plaintiff resulting from the interference. (*Fellhauer v. City of Geneva* (1991), 142 Ill. 2d 495, 511.) The constitutional right to petition the government for redress of grievances justifies interference and bars a claim for tortious interference. (*Arlington Heights*, 37 Ill. 2d at 549-50.) However, such privilege is not absolute. Where such a privilege exists, an action for tortious interference will prevail where plaintiff can plead malice. (*Arlington Heights*, 37 Ill. 2d at 551.) Thus, to succeed, it is plaintiff's burden to plead, through setting forth specific facts, that defendant's actions were unjustified or malicious. *Fellhauer*, 142 Ill. 2d at 512-13.

■ In the instant case, we determine that plaintiff does not sufficiently adduce malice to overcome the privilege. According to the record, in count III plaintiff alleged that "defendant interfered in a direct and wilful effort to gain leverage over plaintiff in his asbestos lawsuit." The count went on to adduce that "[d]efendant, through its

President and Chief Executive Officer, John Popple, wilfully and maliciously interfered with plaintiff's contemplated transaction with Thornton Oil Company by utilizing the input and influence of Mr. Popple's wife, Mrs. Cheryl Popple, an Elgin City Council member, to generate opposition to plaintiff's zoning request." We determine that such allegations are conclusory and do not sufficiently allege facts to support a finding of malice. Since the privilege is not overcome by adequately pleading malice, the count fails to plead sufficiently tortious interference with prospective business advantage. We affirm the trial court's dismissal of count III with prejudice.

## SECTION 353 CLAIM

In count II of plaintiff's third amended complaint, plaintiff sought relief under the theory of tort liability which comes under section 353 of Restatement (Second) of Torts, "Undisclosed Dangerous Conditions Known to Vendor." (Restatement (Second) of Torts §353 (1965).) To state a claim under section 353, plaintiff-purchaser must sufficiently allege that (1) defendant-vendor concealed or failed to disclose a condition which, prior to the sale, created an unreasonable risk to persons on the land; (2) the defendant knew or had reason to know of the condition and realized or should have realized the risk involved; (3) that defendant had reason to believe that plaintiff would not discover the condition; (4) that the condition caused physical harm, after plaintiff took possession but before plaintiff knew or had reason to know of the condition and the risk involved; and (5) before plaintiff had an opportunity to take precautions to prevent the injury. Restatement (Second) of Torts §353 (1965.)

In denying defendant's motion to dismiss count II, the trial court relied exclusively on the decision in *Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428. The trial court stated that under *A, C & S* "whenever you are dealing with something like asbestos, you have to extend the relief beyond the limits that are suggested." According to the trial court, the "underlying philosophy" that is expressed in *A, C & S* dictates that "the mere fact of [the asbestos'] existence creates the potential for liability." Although the trial court indicated that it knew that *A, C & S* should be limited to the facts of that case, it ruled that "underlying that whole decision *** is a suggestion that asbestos is so onerous as to be a separate, independent condition which the courts are going to have to deal with." We do not agree with the trial court's analysis. We find the *A, C & S* case distinguishable from the instant case and on the basis of the following analysis reverse the trial court's ruling on count II.

■■■ It is well established that vendors of real estate are generally not liable for damages due to a condition existing on the property at the time of sale. (See Restatement (Second) of Torts §352 (1965); *Anderson v. Cosmopolitan National Bank* (1973), 54 Ill. 2d 504, 507.) This reflects the doctrine of *caveat emptor*. The deed of conveyance represents the full agreement of the parties and excludes all other terms and liabilities. (Restatement (Second) of Torts §352, Comment *a*, at 234-35 (1965).) Furthermore, public policy supports the free and unhindered sale of real estate, which would be undermined if vendors were to be held liable for injuries which occurred after they sold their interest to another party. *Maisenbach v. Buckner* (1971), 133 Ill. App. 2d 53, 56.

The policies governing real estate transactions differ significantly from the policies applied to other commercial transactions. This is reflected in the distinctions between product liability law, under which a seller's liability continues beyond the sale, and real estate law, under which the seller's liability is determined at the time of transfer of property. In the instant case, plaintiff does not have the same recourse against defendant-seller as he would against the manufacturer of the asbestos-containing insulation. It is on this basis that we find that the trial court erred in relying on the *A, C & S* case. In relying on *A, C & S*, the trial court in this case relied on a product liability action against manufacturers of asbestos where the plaintiff was required by law to remove all asbestos that constituted a health hazard. In contrast, *Weyerhaeuser Co. v. Edward Hines Lumber Co.* (N.D. Ill. 1991), ＿＿ F. Supp. ＿＿, was a section 353 claim against a seller of property, which is more like the instant case. In *Weyerhaeuser*, plaintiff-purchaser bought land from defendant-seller which had been used in defendant's lumber business. On that land there were underground storage tanks for chemical wastes installed and maintained. After execution of the sales contract, plaintiff wrote defendant requesting disclosure of hazardous substances on the land. No response was made, so plaintiff relied on the silent representation that there were no known environmental problems on the land. The *Weyerhaeuser* court recognized that *A, C & S* did not apply in the context of a real estate transaction because of "a key factual distinction" between the cases. "*[A, C & S]* was a products liability action brought not against the former owner and vendor of land but against the manufacturers of asbestos material ***. Thus the Illinois Supreme Court did not have to contend with the tradition[al] rule of non-tort liability of real estate vendors." (*Weyerhaeuser*, ＿＿ F. Supp. at ＿＿.) Thus, despite the fact that *A, C & S* dealt with asbestos, as the instant case does, the

long-standing policy against real estate vendors' liability precludes application of *A, C & S* to this case.

Moreover, plaintiff seeks damages which constitute economic losses—diminished property value, cost of removing contaminants, and consequential loss of income (analysis costs, lost rent, disruption, and time). In *Moorman*, the supreme court defined damages for inadequate value, costs of repair and replacement of the defective product, and consequential loss of profits—without claim for personal injury or damage to other property—as "economic losses." (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 82.) In this context, this case can again be distinguished from *A, C & S*. In that case, the plaintiffs had alleged the requisite "damage to other property" because what was bought from defendant was asbestos-containing material which damaged "other" property—the buildings in which it was applied. (*A, C & S*, 131 Ill. 2d at 446.) Thus, the damage went beyond the product sold by the defendants. Here, the sale included more than asbestos insulation; it included the warehouse and all the fixtures in it. Although plaintiff alleges that "other property" located on the second floor was contaminated with asbestos, plaintiff does not sufficiently allege that "other property" outside the context of the real estate sale was contaminated by the asbestos insulation materials. Therefore, the damages plaintiff seeks constitute "economic losses" according to *Moorman*. Thus, on this basis, this court reverses the trial court's order denying defendant's motion to dismiss count II and remands to the trial court to dismiss count II with prejudice.

For the foregoing reasons, in the appeal by plaintiff, the judgment of the circuit court of Kane County is affirmed in part, reversed in part, and the cause is remanded. In the cross-appeal by defendant, the judgment of the trial court is reversed and the cause is remanded.

Affirmed in part; reversed in part and remanded.

UNVERZAGT and WOODWARD, JJ., concur.