**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 3220431-U

Order filed July 30, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| PETER DUNSMORE & KIMBERLY LATOUR, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellants, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0431 Circuit No. 18-L-94 |
| | ) ) | Honorable |
| SHAWN GALLEGLY, TEA GALLEGLY, COLDWELL BANKER REAL ESTATE, LLC, and JEANNIE D. POTERACKI, | ) ) ) ) | Neal W. Cerne, Judge, Presiding. |
| Defendant-Appellees. | ) ) | |

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Brennan and Hettel concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The circuit court did not err when it granted the defendants' motion for summary judgment.

¶ 2     The plaintiffs, Peter Densmore and Kimberly Latour (Buyers), purchased residential property from the defendants, Shawn Gallegly and Tea Gallegly (Sellers). Coldwell Banker Real Estate, LLC, and Jeannie Poteracki (Brokers) acted as brokers. After the property's back yard

flooded multiple times, the Buyers brought suit alleging fraudulent concealment of a material defect. The Sellers filed a motion seeking summary judgment, arguing (1) they owed no duty to disclose the flooding, (2) the Buyers did not make reasonable inquiry into the issue of flooding, and (3) the Buyers failed to demonstrate any resulting damages. The Brokers joined in the motion. The circuit court granted the defendants' motion for summary judgment, and the Buyers appealed.

¶ 3                                    I. BACKGROUND

¶ 4        On October 1, 2016, the Buyers entered into a contract to purchase residential real estate from the Sellers. Prior to the sale, the Sellers generated a Residential Real Property Disclosure Report (Disclosure Report), which stated that the Sellers were not aware of any "flooding or recurring leakage problems in the crawlspace or basement." Also prior to the sale, the Buyers had the home inspected by a licensed home inspector, who generated an inspection report (Inspection Report). Portions of the Inspection Report were provided to the Sellers' attorney on October 16, 2016, in a letter requesting repair or replacement of rotted wood at the base of the deck located in the property's back yard. The Inspection Report stated, in relevant part, "[w]ood deck frame structure and support showed evidence of wood being rotted on several portions of the wood deck frame and support." The report also noted that one of the support posts for the deck's steps had rotted and become detached.

¶ 5        The Sellers' attorney responded by informing the Buyers that "[m]uch of the deck has been replaced in the past year. While there is some visibly present wood rot, my client is getting quotes for repairs." A few days later, the Sellers' attorney sent another letter stating, "approximately half the deck wood has been replaced in the past year and only minor issues remain." The Sellers' attorney suggested granting the Buyers a repair credit in the amount of $1,600, and the Buyers agreed. The contract closed on January 27, 2017, and the Buyers took possession of the property.

2

¶ 6    On January 26, 2018, the Buyers filed a complaint against the Sellers and the Brokers, alleging violations of the Residential Real Estate Property Disclosure Act (765 ILCS 77/1 *et seq.* (West 2018)) (Disclosure Act) and common law fraud based on three periods of "severe and prolonged inundation" of the property. The Buyers did not allege that the water intruded into the house. However, the Buyers alleged that the Sellers and Brokers had knowledge of flooding issues due to (1) disclosure of a prior basement flooding incident at the time the Sellers purchased the property, (2) an incident of flooding in the neighborhood that occurred while the Sellers owned the house, and (3) the fact that the Sellers discussed flooding in the neighborhood with a neighbor in 2015. The Brokers moved to dismiss the complaint.

¶ 7    On July 21, 2021, the circuit court dismissed the Buyers' claims under the Disclosure Act and granted the Buyers leave to replead the fraud claim. The Buyers filed an amended complaint, again alleging violations of the Disclosure Act, common law fraud, fraudulent concealment, and additional statutory violations against the Brokers. Again, the Brokers moved to dismiss the complaint. Following a hearing, the circuit court dismissed all claims and granted the Buyers leave to replead. The Buyers filed a second amended complaint, which again alleged violations of the Disclosure Act, common law fraud, fraudulent concealment, and additional statutory violations against the Brokers. The Brokers and Sellers separately moved to dismiss the second amended complaint, and the circuit court dismissed all claims with prejudice except for the fraudulent concealment claim, which the court granted the Buyers leave to amend.

¶ 8    The Buyers filed a third amended complaint, followed shortly by a fourth amended complaint. The Brokers moved to dismiss the fourth amended complaint and, following a hearing, the circuit court again granted the Buyers leave to amend the complaint. On February 8, 2022, the Buyers filed a fifth amended complaint, the subject of this appeal. The only counts that had not

been previously dismissed alleged fraudulent concealment against the Sellers and Brokers. On July 26, 2022, the Sellers filed a motion seeking summary judgment. The Sellers articulated three grounds for the motion: (1) the Sellers did not have a duty to disclose the flooding described in the complaint, (2) the Buyers did not make sufficient inquiry into the issue of flooding, which could have been discovered upon reasonable investigation, and (3) the Buyers failed to demonstrate that they were damaged by the flooding. The Brokers joined the Sellers' motion, and the court granted summary judgment on all remaining claims on September 29, 2022. This appeal followed.

¶ 9                                               II. ANALYSIS

¶ 10        On appeal, the Buyers solely contend the circuit court erred when it granted summary judgment in favor of the Sellers on the issue of fraudulent concealment. Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with any affidavits and exhibits indicate that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001). If the plaintiff fails to establish an element of the claim, summary judgment is appropriate. *Id.* The purpose of summary judgment is to determine if triable questions of fact exist. *Pielet v. Pielet*, 2012 IL 112064, ¶ 53. Summary judgment is not appropriate unless the moving party's right to judgment is "clear and free from doubt." *Id.* "If the undisputed material facts could lead reasonable observers to divergent inferences, or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact." *Id.* We review a circuit court's rulings on summary judgment motions *de novo*. *La Salle Bank*, *N.I. v. First American Bank*, 316 Ill. App. 3d 515, 521 (2001).

¶ 11        To state a cause of action for fraudulent concealment, a plaintiff must establish (1) concealment of a material fact, (2) intent to induce a false belief where there exists a duty to

4

speak, (3) that the other party could not have discovered the truth through reasonable inquiry and relied upon that silence as an indication that the concealed fact did not exist, (4) that the other party would have acted differently had it known of the concealed information, and (5) that its reliance resulted in its injury. *Vandenburg v. Brunswick Corp.*, 2017 IL App (1st) 170181, ¶ 31. We focus our inquiry on the second element, whether the Sellers had a duty to speak, as the failure to establish any element of a claim warrants summary judgment. *Morris*, 197 Ill. 2d at 35.

¶ 12 Silence alone does not give rise to fraud. *Heider v. Leewards Creative Crafts, Inc.*, 245 Ill. App. 3d 258, 269 (1993). To create a duty to speak, silence must be accompanied by deceptive conduct or the suppression of material facts, which results in "active concealment." *Mitchell v. Skubiak*, 248 Ill. App. 3d 1000, 1005 (1993). "Under such circumstances, if a party to a contract of sale fails to disclose the whole truth, having the requisite intent to deceive, this amounts to fraud, equivalent to an affirmative falsehood." *Id.* Removing or concealing damage can serve as evidence of active concealment. See *Posner v. Davis*, 76 Ill. App. 3d 638, 642 (1979).

¶ 13 Here, the record indicates the Sellers did not engage in "active concealment." *Mitchell*, 248 Ill. App. 3d at 1005. The Sellers were, at most, silent on the adequacy or inadequacy of the property's drainage. The Sellers were bound by the Disclosure Act, the purpose of which is to provide prospective home buyers with information about material defects known to the seller. *Muir v. Merano*, 378 Ill. App. 3d 1103, 1103 (2008). However, the Disclosure Act does not require disclosure of issues or defects not described in the Disclosure Act (see *Kalkman v. Nedved*, 2013 IL App (3d) 120800, ¶ 23 (the Disclosure Act requires disclosure only of the defects listed in the Act and not other material defects)), and a lack of adequate drainage is not among the defects listed in the Disclosure Act. See 765 ILCS 77/1 et seq (West 2018).

¶ 14 More broadly, the Sellers had a duty to disclose facts that could materially affect the value

5

of the home, provided those facts were (1) known to them and (2) unavailable to the Buyers. *Illinois Central Gulf R. Co. v. Dep't of Local Gov't Affairs*, 169 Ill. App. 3d 683, 690 (1988) ("For example, if the seller of a used house knows of and conceals facts materially affecting the value or desirability of the home and the buyer has no access to that information, the seller has a duty to disclose those facts.") The accumulation of excessive standing water has the potential to affect the value or desirability of a home. See, *e.g.*, *Van Meter v. Darian Park Dist.*, 207 Ill. 2d 359, 369 (2003). However, even assuming the Sellers were aware of the issue, we cannot say the Buyers had "no access" to the relevant information. *Illinois Central Gulf R. Co.*, 169 Ill. App. 3d at 683. The flooding described in the complaint occurred exclusively in the yard, and evidence of such flooding consisted of water damage to the back deck. The Sellers permitted the Buyers to inspect the back yard and the back deck.

¶ 15 Further, the Sellers disclosed the replacement of rotted deck wood prior to the sale. This fact, coupled with the Buyers' commissioned Inspection Report, which also described wood rot on the deck, suggests the Buyers had full access to all relevant information prior to the sale. Having discovered this information prior to the sale, the Buyers cannot now complain that it was not disclosed to them. *Fleischer v. Lettvin*, 199 Ill. App. 3d 504, 510 (1990) (buyer barred from claiming concealment of a defect related to an exterior downspout after the buyer's agents conducted an inspection of the exterior of the house). A party may not enter into a transaction with its eyes closed to available information and then claim deception. *Seefeldt v. Millikin Nat. Bank of Decatur*, 154 Ill. App. 3d 715, 719 (1987).

¶ 16 It is additionally significant that the Buyers did not inquire about the cause of the damage. When a buyer inquires about the cause of damage and the seller's answers are evasive, deceptive, or false, such actions can be said to evince active concealment. See *Russow v. Bobola*, 2 Ill. App.

6

3d 837, 841-42 (1972) (evidence supported fraudulent concealment where the seller failed to disclose flooding, painted and washed away water marks, and gave deceptive or false answers to inquiries about the drainage system). Here, the Buyers did not inquire about the cause of the damage to the deck, and the Sellers disclosed both the wood rot and the fact of its replacement prior to the sale. The Sellers' failure to volunteer unasked-for information, particularly when such information was (1) not required by the Disclosure Act, and (2) readily observable, did not give rise to a claim of fraud or constitute concealment. See *Heider*, 245 Ill. App. 3d at 269 (in claim for fraudulent concealment, vendor of warehouse had "a duty to reveal the existence of the [asbestos] report and the asbestos in the building *upon inquiry from plaintiff*") (emphasis added).

¶ 17        In reaching this conclusion, we reject the Buyers' contention that the Sellers' "position of influence and superiority" created a duty to disclose the property's inadequate drainage. See *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 707 (2002), quoting *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 500 (1996). A duty to disclose material facts may arise in situations where "friendship, agency, or experience" places one party in a special position of trust and confidence with respect to the other party. *Kurti v. Fox Valley Radiologists, Ltd.*, 124 Ill. App. 3d 933, 938 (1984). Here, the Buyers and the Sellers were situated on opposite sides of a real estate contract, and each was represented by an attorney. There is no evidence the Buyers formed anything but an arms-length, transactional relationship with the Sellers. See *Gonzalzles v. American Express Credit Corp.*, 315 Ill. App. 3d 199, 210 (2000) (no fiduciary relationship found where the plaintiff failed to allege any kinship between the parties or a disparity in age, health, or mental condition).

¶ 18        The Sellers' disclosure of the deck repair also suggests the Buyers could have detected the alleged defect prior to purchasing the property with reasonable inquiry. However, we need not

reach this issue, nor the issue of whether the Buyers adequately put forth a claim for damages because the Buyers failed to establish that the Sellers actively concealed a defect and incurred a resulting duty. The circuit court did not err in granting summary judgment for the Sellers.

¶ 19                                      III. CONCLUSION

¶ 20          For these reasons, the judgment of the circuit court of Du Page County is affirmed.

¶ 21          Affirmed.