WILLIAM A. SIMS *et al.*, Plaintiffs-Appellants, v. ROBERT TEZAK *et al.*,
Defendants-Appellees.

First District (1st Division)   No. 1—96—3887

Opinion filed April 13, 1998.—Rehearing denied May 27, 1998.

504

Edward T. Joyce & Associates, P.C., of Chicago (Edward T. Joyce and Arthur W. Aufmann, of counsel), for appellants.

Pederson & Houpt, of Chicago (Sheldon Davidson, Arthur M. Holtzman, and Marilee Roberg, of counsel), for appellees.

JUSTICE GALLAGHER delivered the opinion of the court:

William Sims, Marilyn Sims, Michael Sims, David Sims, and Maureen Sims (plaintiffs) filed their five-count, second amended complaint against Robert Tezak, Joseph Cusimano, Quentin Robert Tezak, Sandra Tezak, William Apple, Edwin Akeman and John D'Arcy (defendants) on April 28, 1995, alleging, *inter alia*, defendants defrauded them and breached various fiduciary duties in connection with the repurchase of stock from certain closely held corporations. The trial court dismissed four counts of the second amended complaint, including plaintiffs' breach of fiduciary duty claim (count I). The trial court also granted summary judgment in favor of defendants on the fraud claim (count IV). Plaintiffs next filed this appeal, challenging only the dismissal of count I and the decision to grant summary judgment on count IV. We affirm in part, reverse in part and remand for proceedings consistent with this opinion.

FACTS

As the present case comes to us after the trial court's dismissal and entry of summary judgment, we present the facts as plaintiffs have alleged them in their pleadings. Plaintiffs were minority

shareholders in certain closely held corporations incorporated under Delaware law—International Games, Inc. (IGI), Hallnox International Games (Hallnox) and IGI, Ltd.[1] Defendants were the majority shareholders, officers and directors of the aforementioned corporations.

In 1981, plaintiffs filed personal and derivative claims in a federal lawsuit against both the corporations and the present defendants. The federal lawsuit alleged that defendants committed various types of fraud, breached their fiduciary duties, and violated multiple securities acts. Ultimately, in 1986, the parties settled the federal lawsuit pursuant to two written agreements under the captions "Settlement Agreement" and "Stock Sale Agreement," both of which were entered into on October 30, 1986. Under the Settlement Agreement, plaintiffs agreed to release all of their claims in the federal lawsuit.[2] Under the Stock Sale Agreement, each corporation agreed to repurchase its respective shares from plaintiffs. Plaintiffs received $1.25 million for their IGI shares, $175,000 for their Hallnox shares and $425,000 for their shares in IGI, Ltd. Plaintiffs owned shares in two classes of IGI stock: class A and class B. As part of the Stock Sale Agreement, plaintiffs accepted IGI's proposal that it repurchase their class A shares at $35,000 per share and their class B shares at $30,000 per share. The validity of the Settlement Agreement disposing of the federal litigation was expressly conditioned upon the timely payment of the purchase price for plaintiffs' shares.

Plaintiffs later discovered that at the time of the settlement their IGI stock had been worth significantly more than the amount IGI paid to repurchase it. Accordingly, they commenced suit in April 1994 and filed their second amended complaint on April 28, 1995. In that complaint, plaintiffs set forth the factual allegations forming the basis of their fraud and breach of fiduciary duty claims.

Plaintiffs allege that, during settlement negotiations in February 1985, defendants' counsel orally represented to plaintiffs that the

---

[1] It is worth noting that neither plaintiffs nor defendants assert that IGI was a "close corporation" as defined under Delaware law. Del. Code Ann. tit. 8, § 342 (1983). Consequently, as minority shareholders in a closely held, but not statutory "close corporation," plaintiffs are barred from receiving any special relief not afforded to minority shareholders in a publicly traded corporation. *Nixon v. Blackwell*, 626 A.2d 1366, 1380 (Del. 1993).

[2] All parties acknowledge that the release provision to the Settlement Agreement contained the following language: "However, this release shall not release or affect any rights or claims which may arise under the terms of the Stock Sale Agreement." Because the present case arises out of the Stock Sale Agreement, plaintiffs have not released the claims they assert here.

financial condition of IGI was deteriorating and that the fair market value of the corporation was little more than its book value—which was approximately $9 million. Under a $9 million valuation, each share of IGI would be worth less than $36,000. Although the federal litigation did not settle until October of 1986, plaintiffs assert that their ultimate decision to accept the repurchase prices proposed by IGI in the Stock Sale Agreement ($35,000 per class A share and $30,000 per class B share) was premised upon the representation that IGI's market value was only $9 million.

Plaintiffs further allege that defendants intentionally concealed the following information while negotiating for the repurchase of plaintiffs' stock in 1986: (1) IGI was planning an extensive corporate recapitalization; (2) several potential buyers had approached IGI expressing their interest in purchasing the corporation; (3) a valuation company retained by IGI, Valuemetrics, Inc., informed IGI that its fair market value substantially exceeded its book value; (4) IGI had consulted with an investment banker regarding an initial public offering and that banker valued the corporation at between $33 and $39 million; and (5) IGI was projecting 1986 sales of approximately $20 million, which constituted a 50% increase over its 1985 sales. Plaintiffs contend that defendants held all of the aforementioned material information within their exclusive control. Moreover, plaintiffs allege that they had no notice of said information until after 1992 when it was reported in the press.

As further evidence of defendants' alleged deception, plaintiffs point to the fact that, by December 19, 1987, defendants' retained investment banker confirmed the fair market value of IGI to be $37 million. According to the second amended complaint, defendants effectuated IGI's recapitalization through an employee stock ownership plan (ESOP), which came into being on January 1, 1987; this ESOP valued IGI at $45 million. Even under the (lesser) $37 million valuation, IGI's per-share value equals approximately $175,000—at least five times the amount per share tendered to plaintiffs under the Stock Sale Agreement.

Defendants filed several motions seeking to dismiss the second amended complaint and, alternatively, summary judgment. With respect to the issues presented in this appeal, defendants essentially argued that: (1) they owed no fiduciary duty of complete disclosure to plaintiffs in connection with the Stock Sale Agreement because that agreement arose in the litigation settlement context; and (2) because plaintiffs had already accused defendants of dishonesty in the earlier federal litigation, plaintiffs could not justifiably rely upon any representations made by defendants as a matter of law. On December

27, 1995, the trial court dismissed count I (the breach of fiduciary duty claim) pursuant to section 2—615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 1994)). The trial court also granted summary judgment in favor of the defendants on count IV (the fraud claim) pursuant to section 2—1005 of the Code. 735 ILCS 5/2—1005 (West 1994). This appeal followed.

## ANALYSIS

■ Plaintiffs first charge that the trial court erred in dismissing count I of the second amended complaint when it held that defendants did not owe a fiduciary duty of complete disclosure to plaintiffs in connection with the Stock Sale Agreement. When ruling on a motion to dismiss under section 2—615 of the Code of Civil Procedure, the trial court must accept as true all well-pleaded facts in the complaint and interpret all of the pleadings and supporting documents in the light most favorable to the nonmoving party. *People v. Claar*, 293 Ill. App. 3d 211, 687 N.E.2d 557 (1997); *Stephen L. Winternitz, Inc. v. National Bank*, 289 Ill. App. 3d 753, 683 N.E.2d 492 (1997). Dismissal is appropriate only if the plaintiff can establish no set of facts that would support a cause of action. *Stephen L. Winternitz, Inc.*, 289 Ill. App. 3d at 755, 683 N.E.2d at 494. Appellate courts apply a *de novo* standard of review to dismissals under section 2—615 of the Code. *Toombs v. City of Champaign*, 245 Ill. App. 3d 580, 615 N.E.2d 50 (1993).

Both sides agree that because IGI is a Delaware corporation, Delaware corporate law applies to the present case. In their brief, plaintiffs contend that defendants, as the officers and directors of IGI, operated under a duty to disclose all information material to plaintiffs' decision whether to sell their IGI stock. Under plaintiffs' view of Delaware law, in all corporate transactions where minority shareholders must decide whether to sell or retain their stock, the board of directors has a duty of candor relating to that decision. To support their interpretation of the duty to disclose, plaintiffs rely upon *Lynch v. Vickers Energy Corp.*, 383 A.2d 278 (Del. 1977), *rev'g* 351 A.2d 570 (Del. Ch. 1976), and *Smith v. Van Gorkam*, 488 A.2d 858 (Del. 1985).

■ We agree with plaintiffs that the Delaware courts have imposed upon corporate directors a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action. *Zirn v. VLI Corp.*, 681 A.2d 1050, 1056 (Del. 1996); *Lynch*, 383 A.2d at 279. However, we cannot agree with the proposition, espoused by plaintiffs, that Delaware law clearly imposes this duty *whenever* a corporation repurchases its own shares.

As defendants point out, the Delaware cases considering the duty of disclosure all do so in the circumscribed context of shareholder votes and proxy solicitation materials. See generally *Stroud v. Grace*, 606 A.2d 75, 86 (Del. 1992) ("[a]ll of our previous decisions involving disclosure requirements, and subsequent shareholder ratification, involved proxy solicitations"); *Zirn*, 681 A.2d at 1053-54 (corporation solicited proxies for shareholder approval of tender offer and merger); *In re Santa Fe Pacific Corp. Shareholder Litigation*, 669 A.2d 59 (Del. 1995) (same); *Van Gorkam*, 488 A.2d at 890 (same); *Lynch*, 383 A.2d 278 (same).

■ In their reply brief, plaintiffs acknowledge that Delaware courts have addressed the duty of disclosure only with respect to the following five scenarios: mergers, proxy solicitations, tender offers, self-tender offers and stockholder votes. Nothing in the record before us suggests that this case falls into any such scenario. While IGI did repurchase its stock from plaintiffs, this repurchase did not constitute a self-tender offer. *Cf. Eisenberg v. Chicago Milwaukee Corp.*, 537 A.2d 1051 (Del. Ch. 1987) (corporation conducted a self-tender offer to repurchase entire class of preferred stock). None of the pleadings indicate that IGI's offer to repurchase plaintiffs' shares was open to all holders of its class A and class B shares, as required by Securities and Exchange Commission regulations. 17 C.F.R. § 240.14d—10(a) (1987). Rather, as noted above, IGI extended an offer to repurchase its shares only to plaintiffs and intrinsically linked that offer to the settlement of the federal lawsuit. We decline plaintiffs' invitation to extend Delaware's director disclosure requirements to the facts of the case at hand. Therefore, we hold that defendants did not owe plaintiffs a fiduciary duty of candor with respect to IGI's repurchase of plaintiffs' shares and affirm the trial court's dismissal of count I of the second amended complaint.

■ We next consider the trial court's decision to grant summary judgment in favor of defendants on count IV of the second amended complaint, plaintiffs' fraud claim. Appellate review of orders granting summary judgment is *de novo*. *Bank One, Milwaukee, N.A. v. Loeber Motors, Inc.*, 293 Ill. App. 3d 14, 20, 687 N.E.2d 1111, 1115 (1997). In applying this *de novo* standard of review, the appellate court must consider anew the facts and law related to the case and determine whether the trial court was correct. *Bank One, Milwaukee, N.A.*, 293 Ill. App. 3d at 20, 687 N.E.2d at 1115. Because we disagree with the trial court's ruling—that plaintiffs were legally precluded from justifiably relying upon the representations made by defendants' counsel during settlement negotiations—we reverse that portion of the trial court's order granting summary judgment in favor of defendants.

■ To sustain a cause of action for fraud, plaintiffs must plead the following basic elements: statements of material facts were made; defendants must have known or believed such statements to be untrue; plaintiffs had a right to rely or were justified in relying upon those statements; the statements were made for the purpose of inducing plaintiffs to act or rely upon them; and plaintiffs were damaged as a result of their reliance upon said statements. *Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534, 607 N.E.2d 194 (1992), *rev'g in part*, 219 Ill. App. 3d 579, 579 N.E.2d 1112 (1991); *In re Witt*, 145 Ill. 2d 380, 583 N.E.2d 526 (1991).

When the trial court granted defendants' motion for summary judgment on December 27, 1995, the court reiterated its reasoning from an earlier disposition of the fraud claim:

"[I]n the underlying [federal] fraud litigation which went on for about five years, there was *** an array of allegations against these defendants for such things as corporate dismissal, attempted tax evasion, concealing information, lying to the plaintiffs, violation of federal and state laws trying to prevent the plaintiff[s] from obtaining the fair value of their stock investment and acting to increase the defendants' value of their stock at the expense or prejudice of the plaintiffs. I think the law *** is that when parties negotiating a controversy in which they allege fraud, dishonesty, and self-dealing by other parties, it is unreasonable to rely upon the alleged representations of the allegedly dishonest parties. I think in those circumstances, you would have to say there can be no justifiable reliance on the representation of those parties and no right to rely as a matter of law."

The trial court then went on to state:

"The court is mindful *** that usually justifiable reliance is a question of fact, but I think in this particular area of law there is a litany of cases that show that it's an issue of—can be an issue as a matter of law and I think would be an issue as a matter of law in this case."

The "litany of cases" relied upon by the trial court was made up of the case law cited by defendants. However, because no Illinois case was among this litany, we find the present case to be one of first impression in this jurisdiction.

One of the cases relied upon by the trial court (and championed by defendants before this court) was a case factually similar to the case at bar, *Metrocall of Delaware, Inc. v. Continental Cellular Corp.*, 246 Va. 365, 437 S.E.2d 189 (1993). In *Metrocall*, the plaintiffs were minority partners in a mobile telephone company who had filed suit against the majority partner group alleging several types of fraud and improper acts. 246 Va. at 367, 437 S.E.2d at 189-90. This litiga-

tion settled pursuant to an agreement amongst the parties by which the majority interest bought out the minority partners; in return, the minority released their claims against the majority. 246 Va. at 367, 437 S.E.2d at 190. Shortly thereafter, the majority group sold the entire concern to a third party at a unit price greater than the unit price the majority had paid to the minority group. 246 Va. at 367, 437 S.E.2d at 190. The minority group filed another suit, this time alleging that during the settlement negotiations the majority had fraudulently concealed and misrepresented (1) their intention to sell the concern, and (2) the existence of negotiations designed to effect such sale. 246 Va. at 373, 437 S.E.2d at 193. The trial court granted the defendants' motion for judgment on the pleadings, finding, *inter alia*, that the plaintiffs' action was barred by the prior release. The appellate court rejected the plaintiffs' argument that the release should be rescinded based upon the defendants' fraud and held that "when negotiating or attempting to compromise an existing controversy over fraud, dishonesty, and self-dealing, it is unreasonable to rely on the representations of the allegedly dishonest party." 246 Va. at 375, 437 S.E.2d at 195.

In reaching its decision in *Metrocall*, the Virginia Supreme Court relied upon the eleventh circuit's decision in *Pettinelli v. Danzig*, 722 F.2d 706 (11th Cir. 1984) (interpreting Florida law). The *Pettinelli* court stated, "[w]hen negotiating or attempting to compromise an existing controversy over fraud and dishonesty it is unreasonable to rely on representations made by the allegedly dishonest parties." 722 F.2d at 710. The eleventh circuit, in turn, premised its decision upon an earlier ruling by the Florida Supreme Court, *Columbus Hotel Corp. v. Hotel Management Co.*, 156 So. 893 (Fla. 1934), wherein that court found no right to rely upon the defendants' representations, where all parties were represented by counsel and in an adversarial relationship. 156 So. at 899, 901.

In support of their position (and that of the trial court), defendants cite several cases from the eleventh and second circuits that have adopted the rule set forth in *Pettinelli*. *Finn v. Prudential Bache Securities, Inc.*, 821 F.2d 581 (11th Cir. 1987); *Zelman v. Cook*, 616 F. Supp. 1121 (S.D. Fla. 1985); *Finz v. Schlesinger*, 957 F.2d 78 (2d Cir. 1992); *Red Ball Interior Demolition Corp. v. Palmadessa*, 874 F. Supp. 576 (S.D.N.Y. 1995).

■ In Illinois, public policy favors the settlement of claims, and where a claim has been fairly resolved it should not be resurrected; nevertheless, Illinois courts should not permit litigants to defraud one another through the use of settlement agreements. *Carlile v. Snap-on Tools*, 271 Ill. App. 3d 833, 648 N.E.2d 317 (1995). We think

that the aforestated rule applies even where such settlement agreements stem from disputes involving fraud or dishonesty. Clearly, as defendants point out, this is not the case in some other jurisdictions, notably Virginia, Florida, and in the eleventh and second circuits. As stated above, we are not bound by the authorities cited by defendants from outside this jurisdiction.

■ This court is reluctant to pronounce a broad rule of law whereby parties, accused of myriad types of fraud and dishonesty, are set loose to live up to the allegations leveled against them while attempting to settle the original dispute. The likely effect of such a rule would be to encourage dishonesty and to drastically reduce the willingness of plaintiffs to settle their fraud claims, because plaintiffs could never hold defendants accountable for any misrepresentations of fact made during settlement negotiations. Illinois law has long held that, where the representation is made as to a fact actually or presumptively within the speaker's knowledge, and contains nothing so improbable as to cause doubt of its truth, the hearer may rely upon it without investigation, even though the means of investigation were within the reach of the injured party and the parties occupied adversary positions toward one another. *Pattiz v. Semple*, 12 F.2d 276, 278 (E.D. Ill. 1926) (interpreting Illinois law), *aff'd*, 18 F.2d 955 (7th Cir. 1927). "[T]he fraud-feasor will not be heard to say that he is a person unworthy of belief, and that plaintiff was negligent in trusting him, and was cheated through his own credulity." *Pattiz*, 12 F.2d at 278.

■ We hold that the justifiable reliance element of fraud is a question of fact and should remain so even in cases like the one *sub judice*. The facts may very well show that plaintiffs were unjustified in relying upon the representations made by defendants during the settlement negotiations that occurred in 1986; the facts may also show that plaintiffs never actually relied upon the representations made by defendants at that time. Our holding today merely announces the Illinois rule that such questions are to be determined by the finder of fact and not by the trial court as a matter of law.

For the reasons stated, we affirm the trial court's dismissal of count I of the second amended complaint, reverse that portion of the trial court's order granting summary judgment and remand this case for proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

CAMPBELL, P.J., and BUCKLEY, P.J., concur.