1-99-3727 First District

January 14, 2002 

BARRY SCHRAGER, ) Appeal from the Circuit

) Court of Cook County.

Plaintiff-Appellant, )

)

) 97 L 1606

) 

NORTH COMMUNITY BANK, ) 

SCOTT YELVINGTON, and )

PETER FASSEAS, ) The Honorable

) Paddy H. McNamara,

Defendants-Appellees. ) Judge Presiding.

PRESIDING JUSTICE COHEN delivered the opinion of the court:

On June 6, 1997, plaintiff Barry Schrager filed a complaint alleging negligence and fraud against defendants North Community Bank, its president, Scott Yelvington, and its chairman and chief executive officer (CEO), Peter Fasseas.  Defendants answered plaintiff's complaint and later moved for summary judgment.  In considering defendants' motion for summary judgment, the trial court agreed with defendants' characterization of plaintiff's fraud count as alleging both fraudulent misrepresentation
 and fraudulent
 concealment of material fact.  The trial court further agreed that plaintiff's negligence count alleged negligent misrepresentation.  On October 20, 1999, the trial court granted defendants' motion for summary judgment on all claims. 

On appeal, plaintiff alleges that the trial court erred in granting summary judgment where it determined that: (1) defendants' statements were opinions
 rather than
 representations of material fact; (2) defendants had no duty to disclose certain facts to plaintiff; and (3) plaintiff's reliance on defendants' statements was not justifiable as a matter of law
.  

For the reasons set forth below, we hold that questions of material fact sufficient to withstand summary judgment exist with respect to each of plaintiff's asserted errors.  We therefore reverse the judgment of the trial court and remand this cause for further proceedings.

BACKGROUND

On March 11, 1993
, as a prospective investor in the 1255 State Parkway Building Limited Partnership (1255 Partnership)
, a real estate venture of Jeffery E.
 Grossman and Donald Grauer
,
 plaintiff Barry Schrager
 attended a meeting held at North Community Bank arranged by Grossman
 to introduce defendants Scott Yelvington and Peter Fasseas to Schrager.  At the time, Yelvington was president of North Community Bank.  Fasseas was the bank's chairman and CEO.  
Both Grossman and Grauer were present at the meeting.  The meeting was held in Yelvington's office at the bank. 

The record reflects that at the time of the meeting on March 11
, North Community Bank held a $600,000
 mortgage (of which $420,000 had been disbursed) on property owned by the 1255 Partnership.  The note on that mortgage, executed on February 24, 1992, was guaranteed by both Grauer and Dr. Lawrence Metrick.  Dr. Metrick was Grossman's daughter's father-in-law.  At his deposition, Grossman testified that Metrick had contacted him by telephone and informed Grossman that Metrick was "getting cold feet" and wished to withdraw his guaranty.  In search of a guarantor to replace Metrick, Grossman testified that in late 1992 he provided Schrager with a prospectus.  The prospectus outlined Grossman's proposal that Grossman proposed that Schrager purchase a 50% share in the 1255 Partnership
 for $375,000, and agree to guarantee the note on the mortgage in place of Metrick.

The parties dispute both the nature of the March 11 meeting and the substance of the matters discussed at the meeting.  Defendants claim that the meeting was simply a "social call," the purpose of which was merely to introduce Schrager to Yelvington and Fasseas.  Defendants maintain that no matters of significant business import were discussed at the meeting.  Schrager, however, claims that it was clearly understood among the parties that the purpose of the meeting was to discuss Schrager's potential investment in the 1255 Partnership. 

Grossman testified at his deposition that when he contacted Yelvington to arrange the meeting, he informed Yelvington that Schrager was his (and Grauer's) "new partner."  
According to Schrager, Grossman also told Yelvington at the start of the March 11 meeting that Schrager was a prospective investor in the 1255 Partnership.  Schrager stated at his deposition that during the March 11 meeting, "Yelvington asked me what I would like to know about [Grossman] or [Grauer]."  Schrager testified that he replied, "
anything
 you can tell me about [Grossman, Grauer] or the project."  (Emphasis added.)  Schrager testified that in response to his inquiry, Yelvington told him that Grossman and Grauer were "excellent real estate developers, very good customers of the bank, and very good business men [
sic
]."  Bank chairman and CEO Peter Fasseas, who later joined the meeting, was asked the same question and gave a substantially similar answer.  Fasseas added that he was "good friends" with Grossman and Grossman's wife.  

At his deposition,
 Yelvington testified that he could not recall whether Schrager made any such inquiry at the March 11
 meeting.
(footnote: 1)  Yelvington further testified, however, that he knew at the time of the March 11 meeting that Grossman was bankrupt.  In re Jeffrey E. Grossman, 92 B 1534 (filed 
January 23, 1992).  Yelvington was also aware of the fact that the 1255 Partnership's
 account at the North Community Bank had been overdrawn at least 57 times during 1992, occasionally in amounts in excess of $10,000.  Yelvington further testified that at the time of the March 11 meeting, he was aware that Grossman and Grauer's planned construction on the 1255 State Parkway premises could not proceed due to disputes both with the building's
 condominium association and, more significantly, with the relevant zoning authorities of the City of Chicago. 

Schrager admitted in his deposition that after the March 11 meeting with Yelvington and Fasseas, he made no additional independent inquiry into the financial history of either Grossman or Grauer.  Schrager further admitted that about three months prior to the March 11 meeting,
 he had begun investing approximately $850,000 in three other real estate ventures with Grossman and Grauer.  In one of these prior ventures, Schrager retained an attorney to draft an agreement designed to "protect his interests."  Schrager retained no attorney with respect to investing in any of Grossman and Grauer's ventures subsequent to the March 11 meeting.  During his deposition, in response to counsel's question about whether Schrager had asked Grossman or Grauer if either had ever declared bankruptcy, Schrager replied: "They were portraying themselves as multi-millionaires.  That would not even have occurred to me."

Plaintiff states that he relied upon defendants' responses to his inquiry in deciding both to become a guarantor on the 1255 Partnership loan in place of Metrick as well as to invest a total of more than $4 million in the 1255 Partnership and other real estate development deals with Grossman and Grauer.  

Subsequent to the March 11 meeting, the $600,000 mortgage loan on the 1255 Partnership property was refinanced with another bank.  As security, Schrager posted on behalf of the 1255 Partnership a letter of credit in the amount of $450,000, executed on December 10, 1993, concurrently with a new note on the refinanced loan.  Grauer admitted in his deposition that there was an understanding, of which Grossman had made him aware
, between Grossman and the North Community Bank to the effect that upon Schrager's posting of the letter of credit, the prior guarantee of Dr. Metrick on the original mortgage note would be cancelled or released.  The record reflects that such a release did in fact occur.   

According to Schrager, all properties in which he invested in reliance on the defendants' endorsement of Grossman and Grauer's business skills subsequently became worthless.
 On February 7, 1997, Schrager
 filed a complaint for damages in the circuit court of Cook County alleging a single count of negligence against defendants. 
  Schrager
 then amended his complaint by adding a fraud count and sought damages totaling more than $4 million.  

On June 28, 1999, defendants filed a motion for summary judgment.  In their motion, defendants described Schrager's somewhat confusing amended complaint as setting forth both a negligence claim predicated on a theory of negligent misrepresentation and a fraud claim predicated on theories of fraudulent misrepresentation and fraudulent concealment of material fact.  The court adopted defendants' characterization of plaintiff's amended complaint and granted defendants' motion for summary judgment.  In so doing, the trial court held that: (1) defendants' statements to Schrager
 expressed nonactionable opinions rather than material facts; (2) no relationship existed between Schrager
 and defendants upon which a duty to disclose might be predicated; and (3) Schrager
 could not prove justifiable reliance on defendants' statements because he could have discovered the relevant financial information about Grossman and Grauer by asking them directly. 

On appeal, Schrager
 argues that the trial court erred in granting defendants summary judgment because defendants' statements constituted
 representations
 of material fact rather than opinions.  Schrager
 further claims that a relationship sufficient to trigger a duty to disclose existed between himself and defendants by virtue of defendants' "position of trust and influence."  Finally, Schrager
 claims that whether his reliance on defendants' statements was justifiable
 is a question of fact that was improperly decided by the trial court on summary judgment.  

Defendants respond that the trial court correctly determined that defendants had merely expressed to Schrager their opinions as to the future performance of Grossman and Grauer.  
 Defendants further argue that the trial court properly determined that they had no "special or fiduciary relationship with [Schrager]" sufficient to trigger a
 duty to disclose to Schrager information about Grossman and Grauer's financial history.  Finally, defendants argue that in light of Schrager's preexisting business relationship with Grossman and Grauer, as well as Schrager
's failure to exercise ordinary prudence in seeking information about the 1255 Partnership investment, plaintiff could not have justifiably relied on defendants' statements as a matter of law. 

ANALYSIS

I. Standard of Review

As this court must determine whether summary judgment was properly granted, our review is 
de novo
.  
Sims v. Tezak
, 296 Ill. App. 3d 503, 508 (1998).  "Summary judgment is to be granted only if the pleadings, affidavits, depositions, admissions, and exhibits on file, when reviewed in the light most favorable to the nonmovant, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  
Berlin v. Sarah Bush Lincoln Health Center
, 179 Ill. 2d 1, 7 (1997); 735 ILCS 5/2-1005(c) (West 2000).  In conducting our review, "we are free to consider any pleadings, depositions, admissions, and affidavits on file at the time of the hearing regardless of whether facts contained therein were presented to the trial court in response to the motion for summary judgment." 
William J. Templeman Co. v. United States Fidelity & Guaranty Co.
, 317 Ill. App. 3d 764, 769 (2000).
  "A triable issue of fact exists where there is a dispute as to a material fact or where, although the facts are not in dispute, reasonable minds might differ in drawing inferences from those facts." 
Petrovich v. Share Health Plan of Illinois, Inc.
, 188 Ill. 2d 17, 31 (1999). 

"Summary judgment is a 'drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt.'      [Citation.]  Summary judgment must be awarded with caution to avoid preempting a litigant's right to trial by jury or the right to fully present the factual basis of a case where a material dispute may exist.  
* * *  
Reversal of [an order granting] summary judgment * * * is warranted where, on review, a material issue of fact or an inaccurate interpretation of the law exists."
  Anderson v. Alberto-Culver USA, Inc.
, 
317 Ill. App. 3d 1104, 1110 (2000).

II. Fraudulent and Negligent Misrepresentation

In Illinois, a claim of fraudulent misrepresentation -- a form of
 common law fraud (
Miller v. William Chevrolet/Geo, Inc.
, No. 1-00-4255, slip op. at 6 (November 27, 2001)
) -- requires clear and convincing proof (
Niemoth v. Kohls
, 171 Ill. App. 3d 54, 68 (1988)) of the following five elements: "(1) a false statement of material fact; (2) knowledge or belief of the falsity by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. [Citation.]" 
 Neptuno Treuhand-Und Verwaltungsgesellschaft MBH v. Arbor
, 295 Ill. App. 3d 567, 571 (1998).  Furthermore, plaintiff's reliance must be justifiable to sustain the cause of action.  
Neptuno
, 295 Ill. App. 3d at 571.

The elements of negligent misrepresentation are substantially similar to those of fraudulent misrepresentation, except that the required mental state is less stringent.  
Board of Education of the City of Chicago v. A, C & S, Inc.
, 131 Ill. 2d 428, 452 (1989).  A defendant's carelessness or negligence in ascertaining the truth or the falsity of his statement is sufficient to sustain a claim of negligent misrepresentation.  
Board of Education
, 131 Ill. 2d at 452.  A plaintiff must further allege that the defendant owed a duty to the plaintiff to communicate accurate information.  
Board of Education
, 131 Ill. 2d at 452. 

As a general rule, the law will not support a misrepresentation claim predicated on an opinion; however, an exception exists where the circumstances suggest that a plaintiff may have justifiably relied on the opinion as though it was a statement of fact.  
Buttitta v. Lawrence
, 346 Ill. 164, 173 (1931).  "'Wherever a party states a matter which might otherwise be only an opinion but does not state it as the expression of the opinion of his own but as an affirmative fact material to the transaction, * * * the statement clearly becomes an affirmation of the fact within the meaning of the rule against fraudulent misrepresentation.'" 
Heider v. Leewards Creative Crafts, Inc.
, 245 Ill. App. 3d 258, 266 (1993), quoting 
Perlman
 
v. Time, Inc.
, 64 Ill. App. 3d 190, 197 (1978).  "Thus, the general rule is that it is not 'the form of the statement which is important or controlling, but the sense in which it is reasonably understood.'"  
West v. Western Casualty & Surety Co.
, 846 F.2d 387, 394 (7th Cir. 1988)
, quoting W. Keeton
, Prosser and Keeton on Torts §109, at 755 (5th ed. 1984).
  "Whether a statement is one of fact or of opinion depends on all the facts and circumstances of a particular case."  
West
, 846 F.2d at 393, citing 
Buttitta
, 346 Ill. at 173; 
Duhl v. Nash Realty Inc.
, 102 Ill. App. 3d 483, 490 (1981); 
Perlman v. Time, Inc.
, 64 Ill. App. 3d 190, 197 (1978); 
Parker v. Arthur Murray, Inc.
, 10 Ill. App. 3d 1000, 1003 (1973).

The trial court held that defendants' statements were "value judgments as described in the Restatement (Second) of Torts § 538(A)" and that "[e]ven when considering context, the statements remain opinion."  Defendants argue that the trial court correctly relied on this court's opinion in 
Neptuno Treuhand-Und Verwaltungsgesellschaft MBH v. Arbor
, 295 Ill. App. 3d 567, 569-70 (1998), 
in ruling that defendants' statements were opinions.  

In 
Neptuno
, we held that an employer's statement -- written in a letter of recommendation -- that a former employee was an "intelligent, industrious
 and innovative young man" was "mere opinion and * * * [could not] form the basis of an action [for fraudulent misrepresentation]."  295 Ill. App. 3d at 571.  Both this court in 
Neptuno
 and the
 trial court in the present case
 quoted the same passage from the Restatement (Second) of Torts to explain how they distinguished between assertions of fact and opinion:

"'[T]he statement that an automobile is a good car is a relative matter * * * . The maker of a statement of this nature will normally be understood as expressing only his judgment and not as asserting anything concerning horsepower, riding qualities or any of the dozen other factors that would influence his judgment.'"  
Neptuno
, 295 Ill. App. 3d at 571-72, quoting Restatement (Second) of Torts §538(A), Explanatory Note, at 83 (1977).

In 
Neptuno
, we concluded that "[i]ntelligence, innovativeness and an industrious nature are personal qualities and whether they exist in a given individual is a matter upon which individual judgment may be expected to differ," 
i.e.
, a matter of opinion.  
Neptuno
, 295 Ill. App. 3d at 572.

In this case, the determination of whether defendants' statements that Grossman and Grauer were "excellent real estate developers, very good customers of the bank, and very good business men" constitute statements of opinion or of material fact depends upon the entirety of the circumstances under which they were made.  
Buttitta
, 346 Ill. at 173.  Plaintiff argues that defendants' statements, viewed in the context of Grossman and Grauer's financial and banking history and defendants' knowledge of that history, were factual affirmations of the men's business acumen and are therefore actionable under Illinois law. 
 Kohls
, 171 Ill. App. 3d at 68. 

We agree.  Viewing the evidence in the light most favorable to Schrager, we hold that reasonable persons could infer that defendants' statements denoted a history of sound fiscal management, economic success and financial stability on the part of Grossman and Grauer.  
Taliaferro v. One Grand Place Venture
, 256 Ill. App. 3d 429, 432-33 (1993).  Despite the fact that the March 11 meeting was held in Yelvington's office at the bank during regular business hours
, defendants persistently deny that it was a business meeting.  Yelvington admitted in his deposition that Grossman told him that Schrager "potentially  would be a partner in the 1255       * * * Partnership, and that [Schrager] potentially would be a guarantor on [a] loan" to the 1255 Partnership for several hundred thousand dollars.  Although Yelvington claimed that he could not recall whether he had received this information from Grossman before or after the March 11 meeting, 
in viewing the evidence in the light most favorable to Schrager (
Taliaferro
, 256 Ill. App. 3d at 432-33), the evidence mandates our concluding for purposes of this analysis that the meeting was for business reasons.  

Both defendants' deposition testimony establishes that prior to March 11, 1993, North Community Bank had grouped together Grossman and Grauer's
 multiple business accounts for supervisory purposes and that the bank's policy required Yelvington to review all overdrafts on those accounts each day.  Bank records reflect that Grossman and Grauer frequently made late payments on the $420,000 mortgage loan.  Yelvington stated in his deposition that he personally spoke to Grossman and Grauer on multiple occasions about their frequent overdrafts and their frequently returned checks.  The record also reflects that Yelvington and Fasseas were both aware that the 1255 Partnership account had been overdrawn at least 57 times in 1992, occasionally in amounts exceeding $10,000.  Finally, the record reveals that both Yelvington and Fasseas were aware at the time of the March 11 meeting that Grossman was then a debtor in bankruptcy proceedings.

Viewing the evidence in the light most favorable to plaintiff, we conclude that the defendants possessed actual detailed knowledge of Grossman and Grauer's financial and banking history.  The circumstances surrounding defendants' statements could reasonably support the inference that defendants were summarizing their detailed knowledge of Grossman and Grauer's banking history and fiscal management capabilities in response to Schrager's request for information concerning Grossman, Grauer and the 1255 Partnership. 
  A basis exists in the record upon which a reasonable finder of fact might conclude that the defendants' statements to Schrager at the March 11 meeting were representations of material fact rather than opinions.  In contrast, 
the record in 
Neptuno
 presented no factual basis
 that might support the conclusion that the writer's assessment of his former employee as being "intelligent, industrious
 and innovative" 
was other than a matter of opinion.
  
Neptuno
, 295 Ill. App. 3d at 572.  
Neptuno
 is therefore inapposite.

Because reasonable minds could draw divergent inferences from the facts before us
, 
we hold that a question of fact
 exists as to whether defendants' statements were representations of fact
 or opinions.
(footnote: 2)  
Petrovich v. Share Health Plan of Illinois, Inc.
, 188 Ill. 2d 17, 31 (1999). 
 We therefore reverse the trial court's order granting summary judgment in favor of defendants on this basis with respect to fraudulent misrepresentation and negligent misrepresentation.  We now turn to the remaining issues on appeal.  

III. Fraudulent Concealment of Material Fact

In Illinois, in order for a plaintiff to prove that the concealment of a fact was a fraudulent misrepresentation, he must prove: "(1) the concealment of a material fact;  (2) the concealment was intended to induce a false belief, under circumstances creating a duty to speak [citation]; (3) the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist; (4) the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the fact was concealed led to his injury. [Citation.]"  
Stewart v. Thrasher
, 242 Ill. App. 3d 10, 16 (1993).  A plaintiff must further demonstrate justifiable reliance, as well as the existence of "a special or fiduciary relationship" giving rise to a duty to convey accurate information.  
Neptuno
, 295 Ill. App. 3d at 573. 

Schrager served as guarantor of the 1255 Partnership's loan from its creditors, the defendants.  As a general rule, no fiduciary relationship exists between a guarantor and a creditor as a matter of law.  
Santa Claus Industries, Inc.
,
 v. First National Bank of Chicago
, 216 Ill. App. 3d 231, 238 (1991).  "If the alleged relationship does not exist as a matter of law, facts from which a fiduciary relationship arises must be pleaded and proved by clear and convincing evidence."  
Magna
 
Bank of Madison County v. Jameson
, 237 Ill. App. 3d 614, 618  (1992).  "The burden of * * * proving the existence of a fiduciary relationship lies with the party seeking relief  * * * ."  
Farmer City State Bank v. Guingrich
, 139 Ill. App. 3d 416, 424 (1985).  

A duty to disclose material facts may also arise from a confidential relationship in which one party is placed "in a position of influence and superiority over [plaintiff],"  by reason of "friendship, agency or experience."  
Connick v. Suzuki Motor Co.
, 174 Ill. 2d 482, 500 (1996).  

The trial court held that defendants had no duty to speak because "there was no fiduciary relationship between the plaintiff and the defendants."  We agree.  Nothing in the record supports the existence of a fiduciary duty.  Schrager argues, however, that defendants assumed the role of "financial advisors" to him and, as a result of that confidential relationship, thereby assumed a position of trust and influence.  Specifically, Schrager argues that "by their conduct in advising plaintiff as to the financial history of Grossman and Grauer, defendants voluntarily assumed a duty to do so in a true and accurate fashion."  Plaintiff cites to 
Union National Bank & Trust Co. of Joliet v. Carlstrom
 for the proposition that "a party may assume a duty to disclose information accurately by its conduct."  134 Ill. App. 3d 985, 989 (1985). 

Defendants respond that plaintiff has not proved by clear and convincing evidence that defendants had a duty to speak arising out of a confidential or fiduciary relationship.

We first note that, contrary to defendants' position, the question before us on review of summary judgment is not whether Schrager has proved the existence of the requisite relationship by clear and convincing evidence.  That is a question to be determined at trial.  "The purpose of summary judgment is not to try an issue of fact but, rather, to determine whether a triable issue of fact exists."  
Luu v. Kim
, 323 Ill. App. 3d 946, 952 (2001).  "To withstand a summary judgment motion, the nonmoving party need not prove his case at this preliminary stage but must present some factual basis that would support his claim."  
Luu
, 323 Ill. App. 3d at 952.  

 
 The March 11 meeting was held in Yelvington's office at the North Community Bank.  Grossman had informed Yelvington prior to the meeting that Schrager was going to be his and Grauer's "new partner."  Grossman and Grauer operated multiple business accounts at the North Community Bank.
  At the time of the meeting, Yelvington and Fasseas were aware of the status of those accounts, including the number and amount of the overdrafts on the 1255 Partnership account, as well as the number of late payments on the mortgage loan.  They were further aware of the fact of Grossman's bankruptcy.  Yelvington was also aware that the proposed commercial
 development at 1255 State Parkway faced serious opposition from both the building's condomin-ium association and the zoning authorities of the City of Chicago.  Also -- significantly -- the bank itself had a pecuniary interest in securing Schrager as a guarantor to replace the skittish Metrick on the 1255 Partnership loan.  

At the March 11 meeting, Yelvington asked Schrager what he wished to know about Grossman and Grauer.  In reply, Schrager asked Yelvington directly whether Yelvington could tell him "
anything
 * * * about [Grossman, Grauer] or the project."  (Emphasis added.)  Yelvington answered that Grossman and Grauer were "excellent real estate developers, very good customers of the bank, and very good business men [
sic
]."  Fasseas later joined the meeting, was asked the same question and gave a substantially similar answer.  Fasseas added that he was "good friends" with Grossman and Grossman's wife.  
         

Viewing the evidence in the light most favorable to Schrager, we must conclude that Schrager sought advice from Yelvington and Fasseas with respect to Grossman and Grauer's  financial status and business acumen, as well as substantive information about the 1255 State Parkway development project.  We hold that 
the record contains sufficient facts from which a reasonable finder of fact could infer that defendants entered into a relationship
 of confidence and trust with Schrager, in which defendants' superior knowledge and experience of Grossman and Grauer's financial history, as well as the status of the 1255 State Parkway development project, including the necessity of obtaining a fresh guarantor, placed defendants in a position of influence over Schrager.  
Connick
, 174 Ill. 2d at 500-01.  The existence of such a relationship would have been sufficient to trigger in defendants a duty to accurately
 disclose facts material to Schrager's inquiry.  
Neptuno Treuhand-Und Verwaltungs-gesellschaft MBH v. Arbor
, 295 Ill. App. 3d 567, 573 (1998).

Thus, questions of fact exist with respect to defendants' duty to disclose.  
The trial court's order granting summary judgment in favor of defendants on this basis
 as to fraudulent concealment is reversed.

IV. Justifiable Reliance

Failure to prove justifiable reliance is fatal to claims of fraudulent misrepresentation, negligent misrepresentation and fraudulent concealment of material fact.  
Neptuno
, 295 Ill. App. 3d at 575. 
 This court has explicitly held that "justifiable reliance * * * is a question of fact" that is "to be determined by the finder of fact and not the by the trial court as a matter of law."  
Sims v. Tezak
, 296 Ill. App. 3d 503, 511 (1998).  Whether plaintiff's reliance is justifiable depends on the circumstances.  "[A]ll of the facts that the plaintiff knew, as well as those facts the plaintiff could have learned through the exercise of ordinary prudence, are taken into account."  
Simon v. Wilson
, 291 Ill. App. 3d 495, 505 (1997).  The question is whether, under the circumstances and "in light of the information open to [the plaintiff], * * * the law may properly say that [the] loss is his own responsibility."  
Chicago Title & Trust Co. v. First Arlington National Bank
, 118 Ill. App. 3d 401, 409 (1983).  Our supreme court has held that "one is justified in relying upon the representations of another, without independent investigation, where the person to whom the representations are made does not have the same ability to discover truth as the person making the representations." 
 
Gerill Corp. v. Jack L. Hargrove Builders, Inc.
, 128 Ill. 2d 179, 195 (1989).  

In assessing the reasonableness of an injured party's reliance in cases of fraud and dishonesty, this court has offered the following guidance:

"Illinois law has long held that, where the representation is made as to a fact actually or presumptively within the speaker's knowledge, and contains nothing so improbable as to cause doubt of its truth, the hearer may rely upon it without investigation, even though the means of investigation were within the reach of the injured party and the parties occupied adversary positions toward one another."  
Sims
 
v. Tezak
, 296 Ill. App. 3d 503, 511 (1998).

"'[W]here the person making the statement has inhibited plaintiffs inquiries . . . by creating a false sense of security' the failure to inquire into facts that could be made available to the plaintiff is not fatal.  [Citation.]"  
Miller v. William Chevrolet/Geo, Inc.
, No. 1-00-4255, slip op. at 13 (November 27, 2001), quoting 
Carter v. Mueller
, 120 Ill. App. 3d 314, 319 (1983).

In the present case, Schrager argues that the trial court improperly disposed of the issue of justifiable reliance by summary judgment.  Schrager
 states that because defendants were officers of the bank, they had "immediate access to the financial history of Grossman and Grauer" with the bank.  By virtue of this access, Schrager
 argues, defendants' statements created in him a sense of security and assuaged any doubts he might have had about Grossman and Grauer.  
Sims
, 296 Ill. App. 3d at 511. 
 

Defendants reply that plaintiff's reliance was not justifiable because his conduct was not reasonable under the circumstances.  Defendants argue that Schrager
 failed to
 exercise ordinary prudence by not undertaking an independent investigation of Grossman and Grauer
's financial history.  Defendants further argue that Schrager
 had ample opportunity to discover the facts of Grossman and Grauer's financial history.  As a result, defendants argue, Schrager was precluded from relying on their statements as a matter of law.

We disagree.  Whether Schrager was required, in the face of defendants' assurances, to undertake an independent investigation of Grossman and Grauer is the heart of the issue. 
 This court has stated that whether reliance is justified is a question of fact.  
Sims
, 296 Ill. App. 3d at 511.  The law in Illinois is quite clear that what constitutes justifiable reliance will depend upon the surrounding circumstances and facts.  
Central States Joint Board v. Continental Assurance Co.
, 117 Ill. App. 3d 600, 606 (1983).  "In this case, a reasonable trier of fact could conclude that [defendants' statements were] designed to and did create exactly [the] sort of false sense of security" Schrager claims.  
Miller
, slip op. at 13; 
Mitchell v. Skubiak
, 248 Ill. App. 3d 1000, 1006 (1993).

We conclude that whether
 Schrager
's reliance on defendants' statements was justified is a question of fact sufficient to survive summary judgment. 
 Miller
, slip op. at 13
; 
Berlin v. Sarah Bush Lincoln Health Center
, 179 Ill. 2d 1, 7 (1997).
  We therefore
 reverse the trial court's order granting summary judgment in favor of defendants with respect to justifiable reliance.

CONCLUSION

For the foregoing reasons, the trial court's order granting summary judgment in favor of defendants is reversed, and the cause is remanded for proceedings consistent with this opinion.

Reversed and remanded.  

McNULTY and COUSINS, JJ., concur.

FOOTNOTES
1:  In their brief, defendants concede that Yelvington made the statements at issue.  

2:    If, on remand, defendants' statements are found to be opinions, an additional fact question is presented as to whether defendants' opinions were expressed as "affirmative fact[s] material to the transaction," and were thus actionable.  
Heider v. Leewards Creative Crafts, Inc.
, 245 Ill. App. 3d 258, 265 (1993).  If defendants' statements are found to be representations of fact, then the trier of fact must further determine their materiality.  
Connick v. Suzuki Motor Co.
, 174 Ill. 2d 482, 505 (1996);
 Board of Education of the City of Chicago v. A, C & S, Inc.
, 131 Ill. 2d 428, 452 (1989).