2020 IL App (1st) 191868

No. 1-19-1868

September 30, 2020

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| 21 KRISTIN CONDOMINIUM ASSOCIATON, by its Board of Managers, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| | ) | No. 17 L 5193 |
| v. | ) ) | |
| | ) | Honorable |
| PIONEER ENGINEERING & ENVIRONMENTAL SERVICES, LLC and ERIC TERMUEHLEN, | ) ) ) | Brigid Mary McGrath, Judge Presiding. |
| | ) | |
| Defendant-Appellant/Appellee. | ) | |

_____

PRESIDING JUSTICE WALKER delivered the judgment of the court, with opinion.
Justices Pierce and Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1    Owners of condominiums at 21 Kristin Drive in Schaumburg, Illinois, sued Pioneer

Engineering & Environmental Services, LLC, and Eric Termuehlen, an engineer who worked for

Pioneer, for negligently misrepresenting the condition of the condominium building.  The circuit

court dismissed the complaint for failure to state a cause of action.  We hold that the owners

adequately alleged that Pioneer had a duty to prospective purchasers of condominium units in the building, and that Pioneer negligently misrepresented the condition of the building in its report. We reverse the circuit court's judgment and remand for further proceedings on the complaint.

¶ 2                                    I. BACKGROUND

¶ 3     21 Kristin Developers, LLC (Developers), hired Pioneer Engineering & Environmental Services, Inc., to complete a Property Condition Assessment (PCA) for the 12-story residential structure located at 21 Kristin Drive. Pioneer delivered the PCA, dated October 2006, in which it identified physical deficiencies in the building, in accord with standards set by the American Society for Testing and Materials (ASTM). Pioneer stated:

> "The ASTM standard was developed to provide current owners, prospective buyers, lending institutions or other interested parties with qualified professional judgments concerning the presence or likely presence of conspicuous defects or material deferred maintenance of a subject property's material systems components or equipment. The scope of this PCA includes a review of documents associated with the subject property, interviews with persons knowledgeable about the physical condition of the subject property, and a visual inspection of the site and any associated structures and other improvements.
>
> *** [T]he information contained within this PCA has been compiled in such a manner that meets or exceeds the recommended practices established by ASTM Standard Practice E 2018-99. The purpose of this report is to assist the Client in determining the condition of the building, in addition to establishing an estimate of replacement costs for the common areas of the subject property."

¶ 4     Pioneer informed Developers of its findings:

"The garage shows evidence of extensive recent concrete repairs to the deck topping and the 'twin-tee' [structural deck] panels. The garage structure still indicates evidence of some water infiltration on the underside of the 'twin-tee' panels. The structural condition of the garage is generally fair. Additional concrete repairs will be necessary in an on-going basis to provide a waterproof parking environment and prevent further degradation to the structure. ***

***

*** The approximate age of the roofing membrane is estimated to be 10 years. *** Some evidence of ponding water is present in the form of algae on the ballast. *** Some small areas of ballast removal are present around the perimeter of the building where potential historical repairs have been made.

The general condition of the roofing system is good. *** With proper maintenance, the Remaining Useful Life (RUL) of the roofing membrane is estimated to be 15 years.

* * *

Pioneer warrants that the findings and conclusions contained herein have been promulgated in accordance with ASTM Standard Practice ***. No assessment can eliminate the uncertainty regarding the potential for physical deficiencies in connection with a property. The PCA is designed to reduce, but not eliminate, uncertainty regarding the potential for physical deficiencies in connection with a property.

*** Any cost estimates associated with this PCA are intended to be opinions of probable costs. These costs should be construed as preliminary budgets. Actual costs will vary depending on the type and design of the suggested remedy, the quality of materials and installation, the type of equipment or manufacturer selected, the quality and scheduling

of the actual work performed, market conditions at the time the work is performed, and various other factors.

This report has been prepared for the sole use of the Client identified in the report and cannot be relied upon by other persons or entities without the permission of Pioneer. The observations and conclusions contained herein are limited by the scope and intent of the work mutually agreed upon by the Client and Pioneer, and the work actually performed. Pioneer believes the findings and conclusions provided in this report are reasonable. However, no warranties are implied or expressed. Pioneer appreciates the opportunity to be of service to you on this project. We hope this information meets your needs at this time."

¶ 5    Developers sold many residential units, and the purchasers formed the 21 Kristin Condominium Association (Association). In May 2017 the Association filed a complaint against Pioneer Engineering & Environmental Services, LLC, alleging that Pioneer Engineering & Environmental Services, LLC, operated as a successor liable for the torts of Pioneer Engineering & Environmental Services, Inc., and Pioneer Engineering & Environmental Services, Inc., negligently misrepresented the condition of the building. The Association alleged:

"Developers and Kristin provided a condominium disclosure statement that contained a copy of the Property Condition Assessment to prospective purchasers of units in the Condominium to comply with various laws including [the Illinois Condominium Property Act (Act),] 765 ILCS 605/22 [(West 2006)].

*** Pioneer and Termuehlen knew that the Property Condition Assessment was being provided in connection with a conversion of the property by Kristin Developers into a condominium. *** Pioneer and Termuehlen provided

- 4 -

information in the Property Condition Assessment for the specific use of prospective buyers to rely on in the purchase of units in the Condominium.

*** Pioneer and Termuehlen negligently made the following false statements and omissions concerning the condition of the property in the Property Condition Assessment:

*** Pioneer and Termuehlen stated that the Roofing had an Expected Life of 25 years and a Remaining Useful Life of 15 years when the condition of the roofing was such that the roofing required remediation in the amount of $626,535.

*** Pioneer and Termuehlen stated that the Elevator Modernization had an Expected Life of 20 years and a Remaining Useful Life of 20 years when condition of the elevators was such that the elevators required remediation in an amount in excess of $600,000 ***.

*** Pioneer and Termuehlen stated that the parking structure concrete had a Remaining Useful Life of 5 years, when the condition of the parking structure concrete was such that the parking structure concrete required remediation in the amount of $336,592."

¶ 6 On May 9, 2019, the circuit court dismissed the complaint with prejudice for failure to state a claim for relief. See 735 ILCS 5/2-615 (West 2018). The Association filed a timely notice of appeal.

¶ 7 II. ANALYSIS

¶ 8 We review *de novo* the dismissal of a complaint for failure to state a cause of action. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). We assume the truth of all well-

pleaded allegations of the complaint, and we construe those allegations in the light most favorable to the plaintiff. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 12 (2005). "[A] cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall*, 222 Ill. 2d at 429.

¶ 9    On appeal, the Association contends that it stated a cause of action for negligent misrepresentation. To state a claim for negligent misrepresentation, the Association must allege facts that could support findings that "(1) defendant is in the business of supplying information for the guidance of others in their business dealings; (2) defendant provided information that constitutes a misrepresentation; and (3) defendant supplied the information for guidance in the plaintiff's business dealings." *Tolan and Son, Inc. v. KLLM Architects, Inc.*, 308 Ill. App. 3d 18, 28 (1999).

¶ 10    Pioneer does not contest the adequacy of allegations that it supplies information for the guidance of others in business dealings. Pioneer contends that it had no duty to the Association or its members because it did not sell the units. The Association relies on section 552 of the Restatement (Second) of Torts as authority for finding that Pioneer had a duty to prospective purchasers of units in the condominium even though Pioneer did not itself sell the units. Restatement (Second) of Torts § 552 (1977); *Harkala v. Wildwood Realty, Inc.*, 200 Ill. App. 3d 447, 456 (1990). Section 552 provides:

> "One who, in the course of his business, profession or employment, or in any
> other transaction in which he has a pecuniary interest, supplies false information
> for the guidance of others in their business transactions, is subject to liability for

pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Restatement (Second) of Torts § 552 (1977).

¶ 11    The section limits liability to losses suffered "(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it." Restatement (Second) of Torts § 552 (1977).

¶ 12    Comments to section 552 show the intention to reach transactions similar to the transaction at issue here:

> "[I]t is not required that the person who is to become the plaintiff be identified or known to the defendant as an individual when the information is supplied. It is enough that the maker of the representation intends it to reach and influence *** a group or class of persons, distinct from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it. It is enough, likewise, that the maker of the representation knows that his recipient intends to transmit the information to a similar person, persons or group." Restatement (Second) of Torts § 552 (1977), comment h.

¶ 13    Pioneer argues that the circuit court correctly dismissed the complaint because the Association seeks to hold Pioneer liable for a violation of the Act, and the Act provides only for causes of action against developers. The Association cited section 22 of the Act in support of its claim that Pioneer knew Developers would use the report to persuade prospective purchasers to buy units in the condominium. Section 22 required Developers to present to prospective

purchasers "an engineer's report furnished by the developer as to the present condition of all structural components and major utility installations in the condominium, which statement shall include the approximate dates of construction, installation, major repairs and the expected useful life of such items, together with the estimated cost (in current dollars) of replacing such items." 765 ILCS 605/22(e) (West 2006). The Association does not ask the court to find Pioneer liable for violating the Act. It asks the court to hold Pioneer liable for breaching its common law duties, as established in section 552 of the Restatement, to the prospective purchasers who relied on Pioneer's report when deciding whether to purchase units in the condominium.

¶ 14    Pioneer argues that the members of the Association could not reasonably rely on Pioneer's report because Pioneer wrote in the report, "This report has been prepared for the sole use of the Client identified in the report and cannot be relied upon by other persons or entities without the permission of Pioneer." But Pioneer allegedly knew Developers intended to use the report to inform prospective purchasers about the condition of the building. A prospective purchaser reading the clause in Pioneer's report, supplied by Developers to all prospective purchasers, would reasonably conclude that the prospective purchaser had Pioneer's permission to rely on their report. See *Kelley v. Carbone*, 361 Ill. App. 3d 477, 480 (2005). We find that the complaint adequately alleges facts that could support a finding that Pioneer knew Developers would use its report for sales of condominium units to the purchasers who became members of the Association, and therefore, in accord with section 552, the complaint adequately alleges that Pioneer supplied the report to provide guidance to the prospective purchasers in their business dealings.

¶ 15    For the remaining element of the cause of action, Pioneer argues that its statements cannot qualify as misrepresentations, because it only expressed its opinion about the condition of the property. See *Neptuno Treuhand-Und Verwaltungsgesellschaft MBH v. Arbor*, 295 Ill. App. 3d

567 (1998). The court in *Schrager v. North Community Bank*, 328 Ill. App. 3d 696 (2002), explained that a court may find that an ostensible opinion constitutes an actionable misrepresentation:

> "As a general rule, the law will not support a misrepresentation claim predicated on an opinion; however, an exception exists where the circumstances suggest that a plaintiff may have justifiably relied on the opinion as though it was a statement of fact. *** ' "Wherever a party states a matter which might otherwise be only an opinion but does not state it as the expression of the opinion of his own but as an affirmative fact material to the transaction, *** the statement clearly becomes an affirmation of the fact within the meaning of the rule against fraudulent misrepresentation.' " *Heider v. Leewards Creative Crafts, Inc.*, 245 Ill. App. 3d 258, 266 (1993), *quoting Perlman v. Time, Inc.*, 64 Ill. App. 3d 190, 197 (1978). 'Thus, the general rule is that it is not "the form of the statement, which is important or controlling, but the sense in which it is reasonably understood." ' *West v. Western Casualty & Surety Co.*, 846 F.2d 387, 394 (7th Cir.1988), *quoting* W. Keeton, Prosser and Keeton on Torts § 109, at 755 (5th ed. 1984). 'Whether a statement is one of fact or of opinion depends on all the facts and circumstances of a particular case.' "

¶ 16    The court in *Power v. Smith*, 337 Ill. App. 3d 827, 832-33 (2003), considered the question of what circumstances justify a plaintiff in relying on a defendant's assertions as statements of fact:

"Sometimes *** the expression of an opinion may carry with it an implied assertion that the speaker knows facts that justify it. Such an assertion is to be implied where the defendant holds himself out or is understood as having special knowledge of the matter that is not available to the plaintiff, so that his opinion becomes in effect an assertion summarizing his knowledge. 'Thus, the ordinary man is free to deal in reliance upon the opinion of an expert jeweler as to the value of a diamond.' *Duhl* [*v. Nash Realty, Inc.*], 102 Ill. App. 3d [483,] 490, *quoting* W. Prosser, Handbook of the Law of Torts § 109, at 726 (4th ed.1971). In *Duhl*, the court upheld a fraud count complaining about a real estate broker's opinion, following an appraisal, of the value of certain real estate. ***

***

Although there is broad language in some of the cases, assurances as to future events are generally not considered misrepresentations of fact. [Citation]. The exceptions are limited to recognized situations such as where a realtor appraises a house."

¶ 17    The *Power* court used several questions to help determine whether assertions count as actionable misrepresentations:

"Were [the] representations here similar to representations of value made by a realtor after an appraisal? Or were they more similar to the representations one partner makes to another in deciding to take on a new client or product line ***. Did [the defendant] have special knowledge of the matter which was not available to [the plaintiff]?" *Power*, 337 Ill. App. 3d at 833.

- 10 -

¶ 18    Applying the *Power* questions here, we find Pioneer's representations similar to a realtor's representations of the value of real estate, and not at all like representations one partner makes to another about an idea for new business.  Pioneer reported on the building's condition from an engineering perspective, using its special knowledge not shared by prospective purchasers.  Under *Schrager* and *Power*, the report includes actionable statements of fact, and not mere opinions.

¶ 19    Pioneer contends that qualifications it put into its report relieve it of any possible liability. It said in its report:

> "Any cost estimates associated with this PCA are intended to be opinions of probable costs. These costs should be construed as preliminary budgets. Actual costs will vary ***.
>
> No assessment can eliminate the uncertainty regarding the potential for physical deficiencies in connection with a property. The PCA is designed to reduce, but not eliminate, uncertainty regarding the potential for physical deficiencies in connection with a property. ***
>
> Due to the limited nature of the work, there is a possibility that conditions may exist which could not be identified within the scope of the assessment, or which were not apparent at the time of report preparation."

¶ 20    Pioneer did not guarantee any exact price for repairs to the roof and the parking garage. Pioneer did, however, make representations about the physical state of the building in 2006, and nothing in the cited clauses relieves it of liability if it made those representations negligently.  The fact that Pioneer expressed its observations about the building by referring to the remaining useful

- 11 -

life of the structure does not shield Pioneer from liability. See *Arlington Pebble Creek, LLC v. Campus Edge Condominium Ass'n, Inc.*, 232 So. 3d 502, 505 (Fla. Dist. Ct. App. 2017).

¶ 21                                   III. CONCLUSION

¶ 22    The Association made a claim in 2017 that Pioneer made negligent misrepresentations in a 2006 report.   The Association adequately alleged that Pioneer had a duty to prospective purchasers because Pioneer knew Developers would use its report to persuade prospective purchasers to buy units in the building.  The Association stated a cause of action by adequately alleging facts that could support a finding that Pioneer negligently misrepresented the condition of the building. We reverse the dismissal of the complaint and remand for proceedings in accord with this order.

¶ 23    Reversed and remanded.

September 30, 2020

---

**No. 1-19-1868**

---

| | |
|---|---|
| **Cite as:** | *21 Kristin Condominium Ass'n v. Pioneer Engineering & Environmental Services, LLC*, 2020 IL App (1st) 191868 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-L-5193; the Hon. Brigid Mary McGrath, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Jeffrey S. Youngerman, Stephen D. Sharp and Christopher L. Gallinari, of Flaherty & Youngerman, of Chicago, for appellant . |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Jeremy P. Kreger and Joseph R. Delehanty, of Stahl Cowen Crowley Addis, LLC, of Chicago, for appellee. |

---